GERALD EDWARD CRITCHLOW *v.* STATE OF INDIANA.

[No. 575S123. Filed May 10, 1976. Rehearing denied August 19, 1976.]

*Myron J. Hack,* of South Bend, for appellant.

*Theodore L. Sendak,* Attorney General, *Lawrence B. O'Connell,* Deputy Attorney General, for appellee.

GIVAN, C.J.—Appellant was charged in a three-count affidavit with the crimes of kidnapping, rape and sodomy. Trial by jury resulted in a verdict of guilty on all three counts. The trial court sentenced the appellant to the Indiana State Prison for a period of not less than life on the charge of kidnapping; to the Indiana Department of Correction for a term of not less than two nor more than twenty-one years on the count of rape; and to the Indiana Department of Correction for a term of not less than two nor more than fourteen years on the count of sodomy.

The record discloses the following facts: On the evening of November 22, 1972, Fritz Moeller and Nancy Marie Schoner, after having a few drinks at local bars in South Bend, Indiana, drove to Douglas Road located behind the airport near South Bend where they parked. After having been so parked for approximately one-half hour, a person later identified as the appellant approached the couple's car and tapped on the car's window. They were informed by the appellant that they were on private property, whereupon the appellant drew a gun and ordered Moeller from the automobile. Appellant then locked Moeller in the trunk of the automobile.

While this was going on, Nancy Marie Schoner got out of the automobile and started running on Douglas Road. The appellant overtook her, grabbed her by the arm and forced her to enter his automobile. The automobile with the appellant and Miss Schoner was then driven to a place described as Westminister Church. Miss Schoner testified that while the appellant was so driving he forced her to commit fellatio upon him.

Upon arriving at the church parking lot, the appellant

forced Miss Schoner to have sexual intercourse with him. Miss Schoner was then returned to the automobile where Moeller had been left locked in the trunk, where she was released by the appellant. Moeller was subsequently released from the trunk unharmed.

Because Moeller was a married man he persuaded Miss Schoner not to report the incident to the police department. In April, 1973, the police department received information concerning the incident and questioned Miss Schoner, at which time she made a full disclosure. The appellant was arrested on April 26, 1973, as a result of that investigation.

Appellant challenges the constitutionality of the kidnapping statute, IC 1971, 35-1-55-1 (Burns 1975), on the ground the penalty provided is excessive. Appellant calls our attention to the fact that the foreman of the jury wrote on the verdict finding the appellant guilty of kidnapping, "Although the jury finds the defendant technically guilty of the crime of kidnapping under the law, life imprisonment seems too harsh of a sentence in this particular case." The jury also affixed notes to the verdicts on rape and sodomy reading, "The jury suggests that the defendant have the opportunity for psychiatric care." There is an affidavit made by juror Gebo stating that the jury returned its verdict with the understanding that the court was bound to consider these observations. Appellant then proceeds to argue the facts in this case, taking the position that the transportation of Miss Schoner was not in the true sense a kidnapping but was for the sole purpose of perpetrating the rape upon her; that once this was accomplished she was returned to the place where she was originally removed; therefore, the life sentence was entirely too harsh.

It is not for this Court to determine legislative policy as to the severity of punishment to be prescribed for any particular crime. In *White* v. *State*, (1963) 244 Ind. 199, 191 N.E.2d 486, 1 Ind. Dec. 636, this Court stated at page 204:

"It may be that the penalty provided by the kidnapping statute is too great in view of the factual situation as herein delineated, and that the legislature should give some thought to an amendment of that statute, but that is a function of the legislature, not of this court."

In *Wilson* v. *State*, (1970) 253 Ind. 585, 592, 255 N.E.2d 817, 21 Ind. Dec. 1, this Court addressed itself to essentially the same argument advanced by appellant here, and in so doing, stated:

"Appellant suggests that this court adopt a principle whereby any restraint and transportation of the victim would be considered only as an integral part of the charge of rape and not as a separate charge of kidnapping. In other words, that because the rape in this case also included a kidnapping or transportation under restraint he should not be prosecuted separately for that crime. Carrying the argument further it seems the victim was not carried very far to constitute a real kidnapping and it was merely incidental to the rape. Of course, the argument fails because a transportation or kidnapping is not necessarily involved in a rape. It might likewise be urged in any crime of violence that the victim was touched only 'lightly' and only incidental to the main crime, and therefore should not be subject to a separate or included charge of assault and battery with intent. In such cases as this the attacker is guilty of a compound crime as happens in instances when a victim is also killed in the commission of another crime, or also kidnaps, while committing a robbery. We do not approve any principle which exempts one from prosecution from all the crimes he commits because he sees fit to compound or multiply them. Such a principle would encourage the compounding and viciousness of the criminal acts."

We therefore hold that the penalty provided by the legislature for kidnapping is a proper exercise of the legislative prerogative and is not subject to alteration by the judiciary.

Appellant further argues that Article 7, § 4 of the Indiana Constitution should be invoked by this Court in this particular case to review and revise the sentence imposed upon the appellant.

Article 7, § 4 of the Indiana Constitution reads in pertinent part as follows:

"The Supreme Court shall have, in all appeals of criminal cases, the power to review all questions of law and to review and revise the sentence imposed."

As we observed in *Beard* v. *State,* (1975) 262 Ind. 643, 323 N.E.2d 216, 45 Ind. Dec. 587, this constitutional provision appears to go beyond our inherent power to review and revise sentences. We further observed in that case that we have thus far refrained from exercising this power and believe that it should only be done under a program of policies and procedures not yet established. However, the above-quoted constitutional provision could hardly be interpreted to mean that the judiciary has unlimited power to, in a sense, legislate by changing any particular criminal sanction at will. The power to "revise the sentence imposed" must necessarily be read to mean that the sentence may be revised within the framework of existing law. We see nothing in the record before us which would justify a change of the statutory life sentence under which the appellant is now incarcerated.

The fact that the jurors appended their personal beliefs or philosophies to the jury verdict or the fact that juror Gebo made an affidavit as to the understanding of the jurors at the time the verdicts were rendered does not change the content of the verdicts. The facts of the case were presented to the jurors. From those facts they determined that the appellant had committed the act charged. It is not within the province of the jury to change statutory penalties. See *Denson* v. *State,* (1975) 263 Ind. 315, 330 N.E.2d 734, 47 Ind. Dec. 625.

Although the appellant has submitted the affidavit of juror Gebo, he claims that such affidavit is not for the purpose of impeaching the jury verdict, but to explain what the verdict, in fact, means. However, we can only gather from appellant's argument that he relies on the juror's affidavit to demonstrate that the appellant, although sentenced to life imprisonment, should not have been

so sentenced. To this extent, in spite of appellant's protestations to the contrary, it appears the only purpose the affidavit could serve would be, in fact, to impeach the verdict. This Court has stated several times that jurors will not be permitted to impeach the verdict. *Stinson* v. *State,* (1974) 262 Ind. 189, 313 N.E.2d 699, 42 Ind. Dec. 687; *Wilson* v. *State, supra.* We, therefore, hold the statements of the jurors appended to the verdict, and the affidavit of juror Gebo, are not germane to the issues here presented.

Appellant next challenges the rape statute, IC 35-13-4-3, (Burns 1975), on the ground that it is void for vagueness. The pertinent part of the statute reads as follows:

> "Whoever has carnal knowledge of a woman forcibly against her will, or of a female child under the age of sixteen [16] years; or whoever being over eighteen [18] years of age, has carnal knowledge of a woman, other than his wife, who is insane, idiotic or feeble-minded, he knowing of such condition; [,] is guilty of rape, and on conviction shall be imprisoned for a determinate period of not less than two [2] years nor more than twenty-one [21] years."

Appellant claims this statute amounts to cruel and unusual punishment, in contravention of the Eighth Amendment of the Constitution of the United States and Article 1, § 16 of the Constitution of the State of Indiana; that it amounts to a penalty not proportioned to the nature of the offense in contravention of Article 1, § 16 of the Constitution of the State of Indiana; imposes a penalty founded on the principles of vindictive justice and not of reformation, in contravention of Article 1, § 18 of the Constitution of the State of Indiana; and denied the appellant a full and impartial trial by jury in a criminal cause because it disregarded the exercise of the jury's right to determine both the law and the facts, in contravention of Article 1, §§ 13 and 19 of the Constitution of the State of Indiana.

In spite of appellant's philosophic dissertations to support his above contentions, we see absolutely nothing in the

content of this statute which sets it apart from any other statute providing for criminal sanction. As we have stated previously in this opinion, it is the legislative prerogative to set criminal penalties. The statute above-quoted operates with evenhanded justice upon all citizens in like situations within the State of Indiana. We see nothing cruel or unusual about the punishment provided, nor do we conceive the penalty provided to be disproportionate to the nature of the offense described. We see nothing in the wording of this statute which would indicate a vindictive attitude on the part of the legislature, nor do we see anything in the language of the statute which would deprive a person charged thereunder of his right to an impartial trial by jury. We recognize the principle of law that the jury is the judge of both the law and the facts in a case. However, as we previously stated, this does not mean that a jury is free to disregard the existing law of the state and to legislate on its own in each case. *Denson* v. *State, supra.* We hold the statute, IC 35-13-4-3 (Burns 1975), does not contain the statutory infirmities alleged by the appellant and that the same is, in fact, constitutional.

The appellant next groups three separate arguments under one heading. The first is that the sodomy statute, IC 35-1-89-1 (Burns 1975), is unconstitutional. The second is that there is absolutely no evidence that the crime of sodomy was committed and third, that both of the previous points were so clearly resolved against the State that the trial court should have entered a judgment on the evidence in appellant's favor on the sodomy charge. As to the constitutionality of this statute, this is certainly no new or novel argument to this Court. In the case of *Dixon* v. *State,* (1971) 256 Ind. 266, 268 N.E.2d 84, 25 Ind. Dec. 239, this Court reviewed the history of this statute. There are judicial interpretations which have occurred over a period of years, as was pointed out in that case. The legislature has met many times since these various interpretations were placed upon the statute. The various acts which are considered to be sodomy include the act of

fellatio, which was alleged in this case. The philosophic arguments presented here as in *Dixon,* to the effect that such should not be a crime, are arguments to be presented to the legislature, not to this Court. We, once again, hold the statute is constitutional and the crime described in the statute is applicable in the case at bar.

Appellant argues there is no evidence that he did anything which could be interpreted as an act of sodomy. It is his claim that the person who committed sodomy, if it was committed, was Miss Schoner. Appellant claims to have been the passive recipient of the acts of Miss Schoner. We find this argument to be unpersuasive to say the least. Miss Schoner had witnessed the appellant place Mr. Moeller in the trunk of his automobile at gun point. The appellant then had run her down on the road, grabbed her by the arm, forcibly placed her in his automobile and while in possession of a gun, had directed her to commit fellatio upon his person. For him to now claim that his role in this episode was entirely passive and that it was, in fact, Miss Schoner who committed sodomy is untenable. We hold the evidence to be abundantly sufficient to demonstrate that it was appellant who was guilty of committing an act of sodomy.

Appellant's third argument under this point is that in view of the foregoing contentions, the court should have entered judgment for the appellant on the evidence on the charge of sodomy. For the foregoing reasons we do not agree with appellant in this observation. We, therefore, hold the evidence in this case was abundantly sufficient for the trial court to permit the questions to be submitted to the jury.

Appellant next contends there was no evidence of actual force used upon Miss Schoner either in the kidnapping or in the sodomy or rape. He seems to base this contention upon the lack of testimony on the part of Miss Schoner that the appellant kept the gun pointed at her at all times. In view of the facts above-recited, the jury was hardly in a position to determine that after locking Moeller in the trunk of the car

at gun point and forcing Miss Schoner into his automobile, that the appellant then put away his gun and that Miss Schoner willingly went with him and participated in the sex acts with which the appellant is charged. For this Court to hold that the evidence demanded such an interpretation by the jury, is indeed asking us to place a strain upon reality. At the time the appellant made his various demands upon Miss Schoner, we could hardly expect her to reply that she would not comply with his demands unless he pointed the gun directly at her. We hold there is ample evidence in this record from which the jury could determine that Miss Schoner was under duress during the entire episode. *Kelley* v. *State,* (1948) 226 Ind. 148, 78 N.E.2d 547; *Parrett* v. *State,* (1928) 200 Ind. 7, 159 N.E. 755.

Appellant also claims there is no evidence as to the venue in this case. There is direct evidence in this record that the car in which Mr. Moeller and Miss Schoner were sitting at the time the appellant approached them was in St. Joseph county. Miss Schoner testified as to specific streets, Douglas and Butternut, and a specific church, Westminister. She testified as to a relatively short lapse of time between the time Moeller was left in the trunk of the car and she and the appellant returned. We, therefore, hold there is ample evidence in this record from which the jury could determine that the crimes in question did, in fact, occur in St. Joseph county, State of Indiana. *Weaver* v. *State,* (1963) 243 Ind. 560, 187 N.E.2d 485, 1 Ind. Dec. 56; *Shipman* v. *State,* (1962) 243 Ind. 245, 183 N.E.2d 823. We would further observe that prior to and during trial the appellant made no objection to being tried in St. Joseph county. He did not challenge the venue of the case at that stage of the proceeding. Although the Constitution guarantees a person charged with crime a right to be tried in the county in which the crime was committed, this is a right personal to the defendant which he waives by failing to object. *Brown* v. *State,* (1941) 219 Ind. 251, 37 N.E.2d 73.

Appellant next claims the trial court erred in permitting testimony by a Cynthia Hughes and a Donald Hughes, as to an event which allegedly occurred on February 23, 1973, involving the appellant. Both Mr. and Mrs. Hughes testified they were husband and wife; that they had driven out on Douglas Road in St. Joseph county on the night of February 23, 1973, to watch the airplanes for awhile. They testified that while so parked, the appellant passed their automobile several times in his car, then stopped and asked if they knew they were illegally parked, asked to see Mr. Hughes' driver's license, then produced a gun, ordered Mr. Hughes to walk to the back of the car and open the trunk. He then tried to get Mr. Hughes to get in the trunk; however, because of the smallness of the size of the trunk and two spare tires, there was difficulty in closing the lid. While this was going on, Mrs. Hughes ran down the road in an attempt to elude the appellant. While this was in progress, police officers appeared upon the scene and arrested the appellant. This evidence was introduced by the State in an effort to show similar *modus operandi* on the part of the appellant. Appellant argues the evidence was inadmissible because there is no similarity, he arguing that in the case at bar there is an allegation that Miss Schoner was forced to commit sodomy and was raped. However, he claims in the offered evidence through Mr. and Mrs. Hughes there was no evidence of sodomy or rape on Mrs. Hughes. The appellant's approach to the Hughes car was remarkably similar to his approach to Mr. Moeller's car. The jury was well within its rights to deduce from this evidence that but for the intervention of the police officers, Mrs. Hughes would have suffered a similar fate to that suffered by Miss Schoner. The evidence presented by Mr. and Mrs. Hughes was admissible to show a common scheme or plan used by the appellant. *Pieper* v. *State*, (1975) 262 Ind. 580, 321 N.E.2d 196, 45 Ind. Dec. 375.

In addition, the appellant claims the evidence submitted by Mr. and Mrs. Hughes was not admissible because it was

subsequent to and not prior to the crime charged. Although most of the cases which we have decided previously have dealt with evidence of crimes committed prior to the crime charged in showing common scheme and plan, we find no case that says such must be the case. There is no logical reason to exclude an act which does, in fact, show common scheme and plan simply because it was committed subsequent to the crime charged. In the case at bar, appellant's arrest was effected because of his attack upon Mr. and Mrs. Hughes. We hold the trial court did not err in admitting the testimony of Mr. and Mrs. Hughes and the police officers involved in the arrest of the appellant at that time.

Appellant next alleges his trial counsel was incompetent. Both in the brief and in the motion to correct errors the appellant makes numerous general allegations of incompetency of trial counsel, claiming counsel was intimidated by a judge who was sympathetic to the State and that largely because of this intimidation trial counsel failed to make the proper objections at the proper time to protect his client. However, appellant points to nothing specific in this regard other than some allusions to the trial counsel's failure to keep out evidence which we have heretofore held to be properly admitted. We see nothing in the record before us to indicate incompetence on the part of the trial counsel. In the course of a trial, counsel must make many decisions as to the conduct of his case. We cannot say the trial counsel was incompetent merely because his trial strategy did not result in an acquittal. If in retrospect one might say that a different course of action than that chosen might have produced a better result, such does not automatically brand counsel as incompetent. We see nothing in this record concerning the conduct of the trial judge or defense counsel which would warrant a reversal in this case.

Appellant next claims the trial court erred in permitting the jury to receive in the jury room during its deliberations,

the trial exhibits. He indicates this was done *sua sponte* by the judge without an opportunity for the counsel to object. An examination of the record in this case does not disclose this to be the fact. We must presume from the record that counsel were present at the time the jury requested to see the exhibits. There was no objection either by the State or defense counsel to this procedure. Even though defense counsel might have objected at that time, it could well be that he felt the appellant's case would best be served if the jury did, in fact, examine the exhibits. In any event, no objection was made and no error has been preserved in this Court in that regard. Where no objection is made at the trial level, there is no error preserved for review on appeal in this Court. *Martin* v. *State*, (1974) 261 Ind. 492, 306 N.E.2d 93, 40 Ind. Dec. 455.

Appellant also raises the question that there is nothing in the record to indicate when the jury started its deliberation, when it was interrupted and when it ended its deliberation. Appellant cites no authority that such an omission should be grounds for reversal. However, an examination of the record discloses that on the 30th day of September, 1974, the jury was instructed and retired to deliberate. It was on that same day that the jury made its request to view the exhibits. The record then recites after viewing the exhibits, the jury was sequestered at the Albert Pick Hotel for the night. On the 1st day of October, 1974, the jury resumed its deliberation and requested a re-reading of the instructions, which was done. Then after further instructions concerning an erroneous verdict on count II, the jury again appeared in open court and rendered its verdict on all three counts. The fact that the precise time of day is not recorded when each of these instances occurred does not render the proceedings void. The record shows all parties were present at the proper times and the record recites a natural, chronological sequence of events during the two days in question. We see no reversible error on this question.

Appellant next claims the trial court erred in granting the State's *motion in limine* which sought to restrict appellant's cross-examination of the prosecuting witness Nancy Marie Schoner by forbidding interrogation concerning her prior sexual history and habits in respect to chastity. Evidence of the sexual history or moral character of the prosecuting witness is not admissible as a defense to the crime of rape. Such evidence is admissible to affect the credibility of the prosecuting witness where there is an issue of consent. 24 I.L.E. *Rape* § 11. However, in the case at bar there is no such issue. Here the appellant was a total stranger to the prosecuting witness who approached her with a weapon and forcefully committed crimes against her person. Appellant, in fact, concedes that the trial court's ruling was correct if this was "just a rape case." However, he takes the position that since this was also a charge of sodomy and kidnapping that the general rule should not pertain and that the trial court should have permitted cross-examination of her concerning her chastity. We fail to grasp the rationale of appellant's argument in this regard. We fail to see how the addition of the crimes of sodomy and kidnapping could introduce the element of consent so as to give rise to the necessity for testing the prosecution witness' integrity concerning her propensity to commit immoral acts. Should it be conceded for the sake of argument that cross-examination of the prosecuting witness would have proved her to be a person of immoral character, such proof would have been entirely immaterial in view of the nature of the crimes charged.

Next the appellant claims the trial court erred in refusing to let him to bail pending appeal. The statute defining rape specifically provides:

> "Upon the conviction of a person for the carnal knowledge of a woman forcibly against her will, sentence shall neither be withheld by the court nor suspended by the court." IC 35-13-4-3 (Burns 1975).

Appellant acknowledges the presence of this statute, but argues that such a provision is unconstitutional. Appellant argues that because the presence of the death penalty and the optional penalty of life imprisonment, provision was made that there be no bond pending appeal in such cases. He argues that "since it is that class of cases to which bail pending appeal (as well as suspended sentences and probation) are to be denied, a reexamination of the impact of those statutes is needed." We do not accept the major premise of appellant's argument in this regard, nor do we follow the logic of his argument. The fact remains it is the legislative prerogative to determine which crimes will be considered of such a serious nature that bond on appeal will be denied. The constitutional provision providing that all offenses shall be bailable except murder or treason applies only to the time before trial. There is no constitutional right to bond after conviction. See *Ex Parte Pettiford,* (1929) 97 Ind. App. 703, 167 N.E. 154. We, therefore, hold the statute denying appeal bond to a person convicted of rape is constitutional and is a proper exercise of the legislative prerogative.

Appellant next claims the trial court erred in denying his petition for processing under the Indiana Criminal Sexual Deviancy statute, same being IC 35-11-3.1-1 (Burns 1975), *et seq.* Section 35-11-3.1-2.1 of the statute specifically provides:

> "A petition may not be made pursuant to (this statute) if the person has been convicted of rape committed by force, violence or coercion."

We therefore hold the trial judge acted pursuant to the statutory mandate by refusing to grant the appellant's petition to be treated as a sexual deviant. The thrust of appellant's philosophic dissertation in this matter appears to be that there is an unequal treatment of persons committing similar crimes so far as the sexual deviancy statute is concerned. However, as we have previously

observed, the legislature may provide for various types of treatment for various classes of persons so long as there is a reasonable classification and that all persons coming within a particular classification are treated similarly. *Allen* v. *Pavach,* (1975) 263 Ind. 574, 335 N.E.2d 219, 49 Ind. Dec. 145. The argument presented by the appellant is an argument more properly addressed to the legislature. We see no constitutional violation of the exercise of the legislative prerogative in setting out the classes enumerated in the deviancy statute.

The appellant further argues that notwithstanding his ineligibility under the rape or sodomy portion of the statute, he is, in fact, entitled to treatment because he was also found guilty of kidnapping, thus coming under the provision of the statute "an offense which directly involves the commission of an illegal sexual act," stating that the kidnapping was such an act. After raising this point, appellant immediately concedes that this Court in the case of *Pieper* v. *State,* (1975) 262 Ind. 580, 321 N.E.2d 196, 45 Ind. Dec. 375, specifically held that the Indiana Criminal Sexual Deviancy Act does not apply to a kidnapping charge, even though it is clearly on the record that the kidnapping was incidental to the commission of sexual acts. Appellant then proceeds to argue, we presume, that our holding in *Pieper* was incorrect and that he should be permitted to come under the deviancy statute because of his kidnapping charge. We disagree with this proposition on two grounds: First, we reaffirm our holding in the *Pieper* case; secondly, we would point out that appellant was also charged and convicted of the crime of rape and sodomy, as above set out, which do not come under the statute. Appellant being thus disqualified to receive treatment under the statute, can hardly be separated into three segments, one segment of which may be treated under the statute. We, therefore, hold that the trial court did not err in refusing to commit the appellant under the sexual deviancy act.

For the foregoing reasons, the trial court is in all things affirmed.

Arterburn and Prentice, JJ., concur; Hunter, J., concurs with opinion in which DeBruler, J., concurs.

CONCURRING OPINION

HUNTER, J.—I concur with one reservation. The majority opinion concludes that the Hughes' testimony was admissible as evidencing a common plan or scheme. As authority the Court cites *Pieper* v. *State*, (1975) 262 Ind. 580, 321 N.E.2d 196. *Pieper* is not a common plan or scheme case. It belongs to the depraved sexual instinct genre. There can be no doubt that the Hughes' testimony is not admissible under the depraved sexual instinct exception to the non-admissibility of other acts rule: the Hughes' testimony reveals no sexual conduct, abnormal or otherwise, on the part of the appellant whatsoever.

The "common plan" exception to the rule of non-admissibility of other acts is not as broad as the majority holds, and the misapplication of this exception appears to be a recurring problem. *See Loveless* v. *State*, (1960) 240 Ind. 534, 166 N.E. 2d 864. The limited evidentiary use of other acts to show a common plan or design is readily gathered from WIGMORE ON EVIDENCE, § 304 (3d ed. 1940) discussing the distinction between the "common plan" and "intent" exceptions:

> "*Theory of evidencing Design or System.* When the very doing of the act charged is still to be proved, one of the evidential facts receivable is the person's Design or Plan to do it (*ante,* § 102). This in turn may be evidenced by conduct of sundry sorts (*ante,* § 234) as well as by direct assertions of the design (*post,* § 1725). But where the conduct offered consists merely in the doing of other similar acts, it is obvious that something more is required than that mere similarity, which suffices for evidencing Intent (*ante,* § 302). The object here is not merely to negative an innocent intent at the time of the act charged, but to prove a pre-existing design, system, plan or scheme, directed forwards to the doing of that act. In the former case (of Intent) the attempt is merely to negative the innocent state of mind at the time of the act charged; in the present case the effort is to establish a definite prior design or system which included the doing of the act charged as a

part of its consummation. In the former case, the result is to give a complexion to a conceded act, and ends with that; in the present case, the result is to show (by probability) a precedent design which in its turn is to evidence (by probability) the doing of the act designed.

"The added element, then, must be, not merely a similarity in the results, but *such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations.* Thus, where the act of passing counterfeit money is conceded, and the intent alone is in issue, the fact of two previous utterings in the same month might well tend to negative innocent intent; but where the very act of uttering is disputed—as, where the defendant claims that his identity has been mistaken—, and the object is to show that he had a general system or plan of working off a quantity of counterfeit money and did carry it out in this instance, the fact of two previous utterings may be in itself of trifling and inadequate significance. So, on a charge of assault with intent to rape, where the intent alone is disputed, a prior assault on the previous day upon the same woman, or even upon another member of her family, might have probative value; but if the assault itself is disputed, and the defendant attempts, for example, to show an alibi, the same facts might be of little or no value, and it might be necessary to go further and to show (for example) that the defendant on the same day, with a confederate guarding the house, assaulted other women in the same family who escaped, leaving the complainant as the only woman accessible to him for his purpose." [Emphasis original.]

It is not possible to rationalize testimony about an incident which occurred on February 23, 1973, some three months after the date of the crime charged as establishing "a definite prior design or system which included the doing of the act charged as a part of its consummation." But see *Gears* v. *State,* (1931) 203 Ind. 380, 180 N.E. 585 (in trial for grand larceny of 50 chickens on July 3, theft of chickens on July 7, attempted theft on July 10th, admissible to show plan to commit series of thefts).

In this case, appellant presented an alibi defense. His identity as the perpetrator of the offense was a question to be resolved. As we recently stated in *Cobbs* v. *State,* (1975) 264 Ind. 60, 338 N.E.2d 632, 634:

"Under the identity exception, evidence of other crimes is admissible if identity is at issue, and the other crimes are connected with the charged crime in such a way that proof of them naturally tends to identify the defendant as the one who committed the charged crime. 1 Underhill's Criminal Evidence § 210 (6th Ed. Herrick Rev. 1973). One application of this exception pertains to crimes involving a similar modus operandi. That is, when the marks common to charged and uncharged offenses set them apart from other offenses of the same general variety, evidence of the uncharged offense is admissible on the issue of identity. *People* v. *Matson*, (1974) 13 Cal.3d 35, 117 Cal. Rptr. 664, 528 P.2d 752. Compare *Smith* v. *State*, (1939) 215 Ind. 629, 21 N.E.2d 709, with *Layton* v. *State*, (1966) 248 Ind. 52, 221 N.E.2d 881."

Appellant's approach to the vehicle in which the Hughes were parked, the pretext used in getting Mr. Hughes out of the car, and forcing Mr. Hughes into the trunk of his auto were acts sufficiently distinctive to allow the jury to consider such actions in deciding that it was appellant who had earlier employed the same method in carrying out the crimes charged in the affidavit. The record further discloses that the vehicles were parked in the same general area, and the approaches occurred about the same time of night.

Arguing for the admission of the Hughes' testimony, the prosecutor referred the trial judge to several cases which state the general rule of non-admissibility of other acts and further state the exceptions to the rule, including the identification exception. While the prosecutor specifically believed the evidence would fall under the common plan exception, as the majority holds, I would affirm the admission of the evidence under the identity exception.

DeBruler, J., concurs.

NOTE.—Reported at 346 N.E.2d 591.