NAKED CITY, INC., and Richard Drost, Appellants,

v.

STATE of Indiana, Appellee.

No. 3–282A23.

Court of Appeals of Indiana, Third District.

April 27, 1982.

Frederick F. Cohn, Chicago, Ill., G. Max Rettig, Indianapolis, for appellants.

Linley E. Pearson, Atty. Gen., George Huff, Jr., Deputy Atty. Gen., Indianapolis, for appellee.

## ORDER DISMISSING PETITION FOR REHEARING

Comes now the Attorney General of Indiana by his Deputy, George B. Huff, Jr., and files his "Petition for Rehearing" to the order of this Court issued on February 22, 1982 in the above entitled appeal which granted the petition of Richard Drost for the setting of an appeal bond pending his appeal to this Court; said "Petition for Rehearing" is in the following words and figures, to-wit:

(H. I.)

And, Comes now Richard Drost by his Attorneys, Frederick F. Cohn and Max Rettig and files his "Brief in Opposition to Petition for Rehearing" which is in the following words and figures, to-wit:

(H. I.)

The Court having read and examined said "Petition for Rehearing" and "Brief in Opposition to Petition for Rehearing" and being duly advised in the premises, now finds:

1. That the petition for an appeal bond was filed by Richard Drost prior to submission of his appeal to this Court.

2. That the record of the proceedings in the Newton County Superior Court under Cause Number SPRS 80–77 and 78 have not been filed with the Clerk of this Court.

3. That the Order issued by this Court on February 22, 1982 granting the petition of Richard Drost was issued pursuant to Rule 6(B), Ind.Rules of Appellate Procedure.

4. That the setting of an appeal bond by this Court is discretionary under Rule 6(B), Ind.Rules of Appellate Procedure.

5. That the Appellant, Richard Drost, has acquired a Seventy-five thousand dollar ($75,000.00) appeal bond by paying a nonrefundable bond fee of seven thousand five hundred dollars ($7,500.00) and has filed said appeal bond with the Clerk of this Court pursuant to said Order.

6. That the Appellant, Richard Drost, has submitted to a physical examination at the Westville Correctional Center as ordered by this Court and that said medical report stated in part that: "This man's condition is equivalent to that of a quadriplegic. He can move his fingers, raise the right arm slightly and the left arm about four inches. He can move his neck but has no shoulder strength. He is unable to move his torso, lower extremities. He has no broken skin areas or any indication of skin deterioration. He has a noticeably swollen left foot with some swelling of right foot. He is unable to move either foot, and they must stay as placed until someone else moves them. He wears special shoes due to the continuous swelling. He states he is not on any medication and rarely needs any. If he must take medication he either gets it in liquid form or chews the tablets because he is unable to swallow pills. He takes liquid Geritol with iron. He had to clear his throat frequently due to accumulation of mucus. He has difficulty digesting foods and states he has metabolic disturbances from an enlarged liver. His diet is practically salt free and low in sugar, but he chooses from regular foods. He does use a specially prepared honey. He has diarrhea usually two—three times a day and must be in a prone position to adequately eliminate. He uses a urinal and does not need a catheter at the present time. He gives a history of reacting to drafts, cold weather or high heat. He easily spikes a high temperature, has chills with accompanying dizziness and anxiety. He maintains he needs a high humidity environment with a stable temperature of 80–82 to prevent breathing difficulties. He cannot lie on his left side and must be turned hourly at night.

"Mr. Drost will require total care. He is unable to feed himself, bathe, do oral hygiene, wash his hair, shave, move, turn, propel a wheelchair, transfer from a wheelchair to bed, or sit on a commode to defecate. He will be prone to skin breakdown without intensive skin care measures round the clock.

"Another area of concern is the physical safety of Mr. Drost. We will not be able to watch him continuously. He is physically unable to protect himself in any manner except to call for help. If he should be molested by any of the other offenders, a hand over his mouth would prevent even this possibility.

"With the present staff we cannot provide even minimal basic care for Mr. Drost. One more Special Attendant would be needed per shift to provide this basic care and still care for the other medical/surgical infirmary patients. Therefore, an additional six Special Attendant positions would be needed to provide the extra Special Attendant on duty each shift."

and said medical report concludes that it will cost the taxpayers of Indiana thirty-five to forty-five thousand dollars ($35,000.00 to $45,000.00) a year to care for Richard Drost if he is not placed on probation in his home and taken care of at his own expense.

7. That the Order of this Court issued on February 22, 1982 in the above entitled cause has in all things been complied with by the Appellant, Richard Drost.

8. That the Order of this Court issued on February 22, 1982 in the above entitled cause is not a majority opinion in writing on the law and the facts of the above entitled appeal.

9. That the Order of this Court issued on February 22, 1982 was merely collateral and procedurally incidental to the eventual final written majority opinion

of this Court to be handed down when all of the preliminary procedures have been complied with so that this Court can consider the merits of the appeal.

10. That the Attorney General of Indiana by his Deputy, George B. Huff, Jr. has prematurely filed a "Petition for Rehearing" pursuant to Rule 11(A), Ind.Rules of Appellate Procedure.

11. That the "Petition for Rehearing" filed herein by the Attorney General of Indiana should be dismissed and it shall be so ordered.

IT IS THEREFORE CONSIDERED, ORDERED, AND ADJUDGED that the "Petition for Rehearing" filed herein by the Attorney General of Indiana by his Deputy, George B. Huff, Jr. on the 11th day of March, 1982 be and the same hereby is dismissed.

The rationale for the above ruling by the Court is as follows: When a petition for rehearing is filed in the Indiana Court of Appeals pursuant to Rule 11(A), Ind.Rules of Appellate Procedure, it is filed ". . . primarily as the basis for a petition to transfer to the Indiana Supreme Court." II A. Bobbitt, *Indiana Appellate Practice and Procedure*, p. 626, Section 12.

The object of a petition for a rehearing is to point out mistakes of law or of fact which were allegedly made by the Court of Appeals in arriving at its written majority opinion. II A. Bobbitt, *Indiana Appellate Practice and Procedure*, pp. 618–7, Section 2; *also see Lesh v. Johnson Furniture Co.* (1938), 214 Ind. 176, 13 N.E.2d 708. "If a petition for rehearing is denied, that is the end and termination of the case in that court and of all matters which were or might have been litigated in the appeal. The appeal court has no further jurisdiction in the case after the denial of the petition for a rehearing." II A. Bobbitt, *Indiana Appellate Practice and Procedure*, p. 626, Section 11; *also see Center Township v. Board of Comm'rs of Marion County* (1887), 110 Ind. 579, 588, 10 N.E. 291, 295. If a petition for rehearing is not filed, the majority opinion of the Court is certified to the trial court as provided by statute. IC 1971, 33–3–2–15.

No written majority opinion has been handed down in the present appeal. This appeal is in the preliminary procedural stages. The record of the proceedings has not been filed as of this date. The Order issued by this Court on February 22, 1982 setting an appeal bond for the Appellant, Richard Drost, is ". . . merely collateral and procedurally incidental to an eventual final decision." *City of Ft. Wayne v. Board of Trustees* (1971), 257 Ind. 4, 268 N.E.2d 735. In *City of Ft. Wayne*, the Indiana Supreme Court dismissed a petition to transfer brought before the Court on the denial of a motion to affirm or dismiss filed in the Indiana Court of Appeals. A unanimous Indiana Supreme Court Opinion written by Justice Hunter held that the petition to transfer which was predicated upon a petition for rehearing in the Court of Appeals was premature and dismissed the petition. Justice Hunter further stated:

"If we are to preserve the operating scheme of appellate practice established by our appellate rules of procedure, it is clear that appellees' petition to transfer must be dismissed. Implicit in Rule AP11(B) is the requirement that the Appellate Court *decide* the case with a written opinion before transfer may be sought. The order above referred to cannot be considered a final disposition of the cause in any sense of the word but was merely collateral and procedurally incidental to an eventual final decision." 268 N.E.2d at 736.

It takes little imagination to appreciate the morass that would be created in the appellate process if each order of this Court could be transferred to the Supreme Court. In the Court of Appeals last year, approximately three thousand six hundred (3,600) orders were signed on collateral and incidental matters affecting an appeal. If a petition for rehearing could be filed on every collateral and incidental ruling, neither the Court of Appeals nor the Supreme Court would be able to function in an orderly fashion. As Justice Hunter so aptly pointed out in *City of Ft. Wayne*, "the operating scheme of appellate practice es-

tablished by our appellate rules of procedure" must be followed. The repetitive reference in Rule 11 to "written opinion or memorandum decision" and the obvious scheme of the Appellate Rules for an orderly appeal of the merits leave little doubt that the petition for rehearing before us is premature.[1]

1. The Dissenting Opinion misconceives the basic issue. It is not whether this Court should grant a petition to set an appeal bond. This was accomplished and concluded on February 22, 1982. The only issue here is whether a petition for rehearing may be filed when there has not been any final decision on the merits of the appeal. This Order answers this very fundamental issue in the negative.

The Dissenting Opinion has taken some very large analytical leaps which have obscured some very basic, legal stepping stones. For this reason, the analytical approach of the Dissenting Opinion is specious and incorrect. First, the Dissenting Opinion treats the issue of obtaining an appeal bond as an issue which is inherently a part of the criminal appeal on the merits. It is not. An appeal bond issue is separate and distinct from any due process or any other substantive issue which is necessary in the prosecutorial process by the State to determine guilt.

A criminal defendant does not have a constitutional right to an appeal bond pending his appeal to the Court of Appeals. *Critchlow v. State* (1976), 264 Ind. 458, 346 N.E.2d 591; *Keys v. State* (1979), Ind., 390 N.E.2d 148; *State ex rel. v. Circuit Court of Elkhart County* (1980), Ind., 412 N.E.2d 72. An appeal bond is a statutory grace given by the sovereign. It may be granted or denied by the trial court. It should be especially noted here that the setting of an appeal bond pending an appeal is separate and distinct from the prosecutorial process to determine guilt because a petition to set an appeal bond can only be considered if the defendant chooses to have his conviction reviewed; otherwise, the petition for an appeal bond is never considered. The granting or the denial of a petition for an appeal bond is never a substantive issue regarding the merits of an appeal. There is nothing guilt sensitive about the granting or denial of an appeal bond. On appeal, the defendant is presumed guilty. *Coates v. City of Evansville* (1971), 149 Ind. App. 518, 273 N.E.2d 862, 867. *Also see State ex rel. Crumpacker v. Lake Super. Ct.* (1979), Ind., 386 N.E.2d 663 at 664.

A second analytical stepping stone missed by the Dissenting Opinion is that concerning the function of Rule 6(B), Ind. Rules of Appellate Procedure. The Dissenting Opinion states:

"The majority's original grant of the stay pursuant to Ind. Rules of Procedure, Appellate Rule 6(B) in effect found an abuse of discretion by the trial court and reversed its denial of the stay."

Under the provisions of Rule 6(B) the function of the Court of Appeals is to *reconsider* the petition for an appeal bond pending an appeal—not to review the discretion of the trial court. The circumstances considered by the Court of Appeals may not be the same circumstances considered by the trial court when it denied the petition for an appeal bond. The granting of an appeal bond by the Court of Appeals is in aid of appellate jurisdiction as set forth in the Indiana Supreme Court Rules. These Rules do not provide for any further review of the bond issue, since any ruling on the petition for an appeal bond pending the appeal is collateral and incidental to a review of the substantive law questions, evidentiary questions, and procedural questions which were used in the guilt determining process during the prosecution and at trial.

Therefore, the denial of or the granting of a petition for an appeal bond may not be ". . . argued in the appeal on the merits of the case." as contended by the Dissenting Opinion. Likewise, it is not ". . . a final adjudication of an issue." as contended by the Dissenting Opinion, because it is not a determinative issue of guilt which must be on the merits of the appeal. A third analytical stepping stone missed by the Dissenting Opinion is the statutory duty of sentencing. The Dissenting Opinion contends that:

"The majority would seemingly ignore the fact that the Superintendent has determined that the Department of Correction would be able to properly maintain Drost."

What the Superintendent determines has nothing to do with Drost's sentence. It may appear from the trial judge's order that he is leaving the commitment or probation of Drost up to the Superintendent. This he can not do. The trial judge can not delegate his statutory duty to sentence Drost. Ind.Code 35-50-1-1 (Supp. 1981). If after considering the medical report the trial judge decides to place Drost on probation, he may do so, but he can not delegate that sentencing decision to the Superintendent.

A fourth analytical stepping stone is somewhat occultated by the assertion of the Dissenting Opinion:

"If, on appeal, Drost's conviction is affirmed, the stay of execution pending appeal would be automatically dissolved inasmuch as no appeal would be pending. If Drost's conviction is reversed, he will be free as a matter of right and the stay would be unnecessary."

It assumes: 1) the granting of an appeal bond under Rule 6(B) is not collateral or incidental to a final decision of the merits; 2) the granting of a petition for an appeal bond is a final adjudication on meritorious issues involving the guilt and conviction of the defendant rather than a statutory grace by the sovereign; 3) the Indi-

PAUL H. BUCHANAN, Jr.
Chief Judge

ROBERT H. STATON, Judge

ROBERT W. NEAL, Judge

HOFFMAN, Presiding Judge, dissenting.

I dissent from the majority's order dismissing the State's petition for rehearing.

In its order, the majority makes specific findings of fact. Finding number 6 appears to be nothing more than an attempt to strengthen the basis of its original stay order by setting out a lengthy quote from a "medical report." This finding may be somewhat misleading when taken out of context. The quote is actually from a document entitled "Nursing Interview and Assessment." This document is merely one report in a packet of materials transmitted to this Court by the Department of Correction. Additionally, the materials include: a medical report, a dental examination, an EKG report, a hematology report and an x-ray report. This information was compiled and examined by the Superintendent of the Westville Correctional Center. In a cover letter to the packet of medical reports the Superintendent stated:

"The physical examination was completed as ordered to determine '. . . . . . . . . . . . . as to whether or not the Department of Correction can maintain the defendant without injury to his health.'

"*Based upon the findings of that physical examination, it is determined that the Indiana Department of Correction will be able to properly maintain the defendant at either the Westville Correctional Center or another facility or institution that is under contract to the Department of Correction for care of acute medical problems.*" (Emphasis added.)

The majority would seemingly ignore the fact that the Superintendent has determined that the Department of Correction would be able to properly maintain Drost. It is interesting to note that although Drost pleaded guilty to certain crimes, and was sentenced accordingly, he remains at liberty despite the fact that he could be properly maintained by the Department of Correction. One might ask whether Drost's physical disabilities and ailments put him beyond the reach of the law.

In the order dismissing the State's petition the majority rules that the State's petition for rehearing is premature because the original order granting the stay of execution is ". . . merely collateral and procedurally incidental to an eventual final decision." What the majority ignores however is the fact that the trial court's order denying the stay of execution was a final order disposing of a single issue. The majority's original grant of the stay pursuant to Ind. Rules of Procedure, Appellate Rule 6(B) in effect found an abuse of discretion by the trial court and reversed its denial of the

ana Supreme Court Rules provide for a review of the Court of Appeals ruling before a final decision of the appeal on the merits; and finally, 4) the sovereign's statutory grace to let a criminal defendant to bond pending his appeal is a ruling that the Attorney General of Indiana who is representing the sovereign may statutorily appeal. IC 35–1–47–2 (amended 1981). None of these assumptions are true.

Too, the Dissenting Opinion overlooks the duration of Drost's sentence. He was sentenced to two years. If good time is taken into consideration, he would serve approximately one year. If his petition for an appeal bond were denied, his appeal to this Court would be concluded at a time approximating his discharge from prison thus denying him the benefit of a meaningful appeal.

Finally, the fifth analytical stepping stone which is merely a reflection of this Court's

records. The Dissenting Opinion does not agree with a former Chief Justice of the Indiana Supreme Court, Arch N. Bobbitt, who stated in his two volume work, II A. Bobbitt, *Indiana Appellate Practice and Procedure*, p. 626, Section 12, that the petition for rehearing was used ". . . primarily as the basis for a petition to transfer to the Indiana Supreme Court." The number of motions to correct errors granted by the trial courts in Indiana is not readily available, but I would suspect the number granted is very small when compared to the number denied. However, the number of petitions for rehearing granted in comparison to the number filed and denied is available from the records of this Court. Last year, there were approximately 432 petitions for rehearing filed. All were denied except ten. It would appear that the former Chief Justice of the Supreme Court is primarily correct.

stay. The majority now forecloses the State's right to seek a rehearing, and possibly transfer, of a final adjudication on the stay. The only avenue now available to the State in its attempt to have the Court of Appeals order reviewed is through an application to the Supreme Court for a writ of mandate.

In support of its position, the majority cites *City of Fort Wayne v. New Haven* (1971), 257 Ind. 4, 268 N.E.2d 735. The majority fails to distinguish a crucial difference between the denial of a motion to affirm or dismiss and the granting of a stay of execution. The denial of a motion to dismiss or affirm does not operate as a final adjudication of any issue. The grounds raised in the motion may still be argued in the appeal on the merits of the case. Many times these motions are denied simply because the Court of Appeals prefers to decide a case on its merits when possible. *See Lloyd v. Weimert* (1970), 146 Ind.App. 666, 257 N.E.2d 851; *Bailey v. Bailey et al.* (1967), 142 Ind.App. 119, 232 N.E.2d 372; *Kerski v. St. John's Hickey Memorial Hospital et al.* (1966), 138 Ind.App. 190, 212 N.E.2d 782.

The majority's grant of the stay on the other hand is a final adjudication of an issue. It is utterly pointless to postpone review of the decision until the appeal on the merits is decided. If, on appeal, Drost's conviction is affirmed, the stay of execution pending appeal would be automatically dissolved inasmuch as no appeal would be pending. If Drost's conviction is reversed, he will be free as a matter of right and the stay would be unnecessary. Delaying review of the stay will render the issue totally moot. Inasmuch as the majority has made a final adjudication on the issue, I cannot agree that the majority's stay order is "merely collateral and procedurally incidental to an eventual final decision."

The present case is analogous to *State ex rel. Drollinger v. Milligan* (1975), 165 Ind. App. 435, 332 N.E.2d 799. The Court of Appeals in *Drollinger* denied a petition for a writ of mandate to require the judge of the Montgomery Circuit Court to set bail pending appellate review of revocation of Drollinger's probation. Rehearing was denied on August 27, 1975. Transfer was denied by the Indiana Supreme Court on December 5, 1975. Rehearing and transfer were denied, not dismissed. Drollinger was given an opportunity to have the Court of Appeals' denial of his petition reviewed by both the Court of Appeals and the Supreme Court.

I also cannot agree that a petition for rehearing is filed "primarily as a basis for a petition to transfer to the Indiana Supreme Court." A petition for rehearing is to the Court of Appeals what a motion to correct errors is to the trial court. It permits a party to point out mistakes of law or fact and allows the Court to make any necessary modifications or corrections. *See West v. Ind. Ins. Co.* (1969), 253 Ind. 1, 247 N.E.2d 90 on remand 148 Ind.App. 176, 264 N.E.2d 335; *Welsh, Governor, et al. v. Sells et al.* (1963), 244 Ind. 423, 193 N.E.2d 359; *Daviess-Martin Co. etc. v. Pub. Serv. Comm.* (1961), 132 Ind.App. 610, 175 N.E.2d 439; *Stillabower et al. v. Lizart et al.* (1959), 130 Ind.App. 65, 161 N.E.2d 195. By dismissing the State's petition for rehearing as being premature, the majority is foreclosing any opportunity to correct an error until after the issue becomes moot.

· I would grant the State's petition for rehearing and dissolve the stay of execution.