James L. KELLY, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 582S199.

Supreme Court of Indiana.

Aug. 29, 1983.

Marcus C. Emery, Steers, Sullivan, McNamar & Rogers, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, James L. Kelly, was convicted by a jury in a consolidated trial of two counts of child molesting, one Class A felony and one Class C felony, Ind.Code § 35–42–4–3 (Burns 1979 Repl.), two counts of incest, Class D felonies, Ind.Code § 35–46–1–3(a) (Burns 1979 Repl.), and two counts of being an habitual offender, Ind. Code § 35–50–2–8 (Burns 1979 Repl.). On one cause number, defendant was sentenced to concurrent terms of fifty and four years plus an additional consecutive term of thirty years. On the second cause number, he was sentenced to concurrent terms of eight and four years plus an additional consecutive term of thirty years. The latter thirty year term was subsequently vacated by the trial court in its ruling on defendant's belated motion to correct errors. Defendant

now raises the following five issues for our review:

1. Whether the trial court erred in granting the state's motion in limine based upon the rape shield statute;

2. Whether defendant was denied effective assistance of counsel;

3. Whether the evidence was sufficient to sustain the verdicts;

4. Whether the trial court erred in failing to set forth reasons for imposing maximum sentences; and

5. Whether the trial court erred in sentencing defendant on the habitual offender count.

A brief summary of the facts from the record most favorable to the state shows that on December 28, 1979, defendant and his fifteen year old daughter were returning from a shopping trip when defendant pulled his van off of the road and said to his daughter, "Can I eat you?" The daughter said "No" and started to cry. Defendant did not assault his daughter at that time but talked to her and then drove her back to his girlfriend's house. Later that day defendant drove his daughter to her mom's home, but on the way there pulled the van off of the road. His daughter asked what he was doing and he said, "You're going to hate me for this." His daughter saw he had a pocket knife approximately five inches long and she started to cry. Defendant said, "You don't want me to force you" and she said "no." She went to the back of the van and defendant had intercourse and oral sex with her against her will. Defendant had previously sexually molested her since she was in the sixth grade.

The second incident occurred on the morning of January 4, 1980, when defendant entered the bedroom of another daughter. The girl testified that she woke up between 5:30 and 7:30 a.m. and saw defendant kneeling by her bed with only a tee shirt on. He asked if he could scratch her back. She replied that he could if he did not go farther. He started to rub her back and then forced her to roll over onto her back and raped her. Defendant had previously sexually molested this daughter starting when she was in the third or fourth grade.

## I.

Defendant first contends that the trial court erred in granting the state's motion in limine which requested the court to prohibit any mention of, or references to, the victims' past sexual conduct in accordance with the rape shield statute, Ind.Code § 35–1–32.5–1 (Burns 1979 Repl.). He argues that he has professed his innocence on all the charges and that the victims and their mother pressed charges against him because he had threatened actions against them for delinquency and neglect. He asserts that his daughters were using drugs and alcohol, running away from home, were sexually promiscuous and lived in a deplorable environment. His tendered exhibit No. 2 was a letter from one daughter describing the living conditions in her mother's home and the use of alcohol and sexual promiscuity of both daughters. He argues that this letter would have supported his allegation that the victims only testified out of fear that he would report them to juvenile authorities for their conduct and living conditions. He argues that since his defense was based upon the bias and ulterior motives of the witnesses, he needed to have the right to the full confrontation and cross-examination of them.

This Court has clearly held that Indiana's Rape Shield Statute does not violate a defendant's Sixth Amendment right to confront witnesses absent a showing of actual impingement on cross-examination. *Moore v. State,* (1979) 271 Ind. 464, 393 N.E.2d 175; *Lagenour v. State,* (1978) 268 Ind. 441, 376 N.E.2d 475; *Roberts v. State,* (1978) 268 Ind. 127, 373 N.E.2d 1103. In this case, defendant was allowed to question the witnesses regarding acts of delinquency other than sexual conduct, such as alcohol abuse, drug abuse, and running away from home. He also presented evidence concerning the living conditions and conduct of the girls. It is clear that defendant was not prohibit-

ed from impeaching the credibility of the witnesses by means other than their prior sexual conduct.

The purpose of the Rape Shield Statute is to "shield victims of sex crimes from a general inquiry into a history of their sexual conduct" and to keep these victims from feeling that they are on trial. West's Ann. Ind.Code § 35–1–32.5–1 (1978) (Commentary, p. 708); *Lewis v. State,* (1983) Ind., 451 N.E.2d 50; *Moore v. State,* 271 Ind. at 468, 393 N.E.2d at 178. That purpose has been served in this case and the trial court properly invoked the Rape Shield Statute.

## II.

Defendant next alleges that he was denied effective assistance of counsel due to several acts and failures to act by his counsel which allegedly reduced his trial to a mockery of justice.[1] He points out that when he appeared for trial on January 5, 1981, his counsel had failed to subpoena certain witnesses and this resulted in a continuance. Later, when the trial was convened on January 19, his counsel spent only fifteen minutes, during the trial, interviewing the witnesses who were present. Some of defendant's witnesses who were present were not called to testify and some witnesses were not subpoenaed. One witness was not well-prepared and could not recall some important events. Defendant also alleges his counsel failed to obtain available evidence critical to the habitual offender proceedings, failed to adequately consult with him, failed to request psychiatric examination of the victims, failed to adequately cross-examine one of the victims, and failed to subpoena other critical records regarding counseling the victims had received. He finally alleges that his counsel referred to him in front of the jury as an alcoholic and a poor parent.

█ Regarding competency of counsel, it has been more than frequently stated by this Court that there is a presumption that counsel is competent and that strong and

convincing evidence is required to rebut the presumption. *Lindley v. State,* (1981) Ind. 426 N.E.2d 398; *Rinard v. State,* (1979) 271 Ind. 588, 394 N.E.2d 160; *Jones v. State,* (1978) 270 Ind. 141, 387 N.E.2d 440. Incompetency of counsel revolves around the particular facts of each case; the standard of review on this issue is the mockery of justice test as modified by the adequate legal representation standard. *Crisp v. State,* (1979) 271 Ind. 534, 394 N.E.2d 115; *Cottingham v. State,* (1978) 269 Ind. 261, 379 N.E.2d 984. This Court will not speculate as to what may have been the most advantageous strategy in a particular case. Isolated poor strategy, bad tactics, or even inexperience do not necessarily amount to ineffective counsel. *Hollon v. State,* (1980) Ind., 398 N.E.2d 1273; *Smith v. State,* (1979) Ind., 396 N.E.2d 898.

█ First, we note that the record shows that defendant had consulted with his counsel and informed him of his witnesses and how those witnesses would be able to assist in the defense. Most of these witnesses were character witnesses and the choice of witnesses for trial is a matter of trial strategy. Several character witnesses did testify for defendant and he has not shown how the failure to call additional character witnesses or to subpoena other witnesses would have prejudiced him. He has also not shown that the continuance at the start of the trial prejudiced him in any way. In fact, the record shows that the continuance was granted because the state's attorney was ill while defendant's attorney was ready to proceed at that time.

█ Defendant also alleges that his counsel was ineffective because he did not interview the defense witnesses before the trial but waited until trial to confer with them. It is clear that failure to conduct discovery is a tactical matter and does not necessarily establish ineffective representation. *Rodgers v. State,* (1981) Ind., 415 N.E.2d 57; *Leaver v. State,* (1981) Ind., 414

---

1. The record shows that defendant was represented during the course of his trial by two attorneys who were associates and worked together on this case. All references to trial counsel will cover both attorneys.

N.E.2d 959. Furthermore, defendant had informed counsel of his witnesses and of how they would be of aid, and counsel had been provided with the state's discovery, so it would not have been necessary for him to interview all of the witnesses before trial. The faulty memory of one witness cannot be attributed to incompetency of counsel as an attorney cannot suggest answers to a witness in preparing for trial.

■ Another complaint by defendant is that his counsel failed to request a psychiatric examination of the victims. This Court has held that a defendant has no right, in a sex offense case, to subject the victim to a psychiatric examination. *Page v. State,* (1980) Ind., 410 N.E.2d 1304. Defendant also argues that his counsel should have subpoenaed certain records of the Midtown Mental Center where his daughters had gone for counseling. These records would not likely have been discoverable due to the doctor-patient privilege and there can be no ineffective assistance from a failure to do futile acts.

■ Other allegations of incompetence involve matters of trial strategy, including decisions on which witnesses to call, the decision not to cross-examine one of the girls about a letter she had written to defendant, and the decision not to object to consolidation of the two cases. It is clear that choices of trial strategy and tactics are insufficient to establish ineffective representation. *Duncan v. State,* (1980) Ind., 400 N.E.2d 1112.

Defendant further alleges that his attorney did not prepare sufficiently for the habitual offender charges because he did not find out from other court records that one of the prior convictions might be reversed. However, the record shows that the reason for possibly having the prior sentence set aside was not discovered until after this trial, so we find no evidence here of inadequate preparation.

Finally, defendant argues that during the final arguments, his counsel called him an alcoholic and a poor parent. However, the record shows that these comments were part of counsel's strategy in answering the state's arguments. Evidence had been presented at trial about defendant's alcohol abuse and the reference to defendant as an alcoholic was part of the strategy to show that alcoholics could be reformed. Counsel showed that defendant's alcohol problem had caused him not to be a good parent and had caused him to leave his family, but that he had then returned and tried to become a better parent and discipline the children. This argument was all in support of the defense theory that defendant's attempts at discipline had led the girls to plot against him.

■ After a consideration of the totality of the circumstances in this case, we find that defendant has not shown how any of his attorney's alleged failures to act or tactical choices harmed his cause. As we explained above, we will not pass judgment on the merits of the strategies employed. Defendant has not shown that any of his trial counsel's judgments or strategies turned the proceedings into a mockery of justice or denied him adequate legal representation. There was no error here.

### III.

Defendant next contends that there was insufficient evidence to support the verdict of child molesting as a Class A felony on the first count. He claims that he was not armed or using or threatening the use of deadly force. However, the record does not support this contention. Defendant's daughter testified that she saw a knife in his hand when he stopped the van in order to commit the offense. She also unequivocally testified that the intercourse was against her will and that she was afraid defendant would kill her if she didn't cooperate.

■■ It is clearly established that it is not necessary for a weapon to be held on the victim of a sex crime at all times in order to establish duress. *Dean v. State,* (1980) Ind., 398 N.E.2d 1270; *Critchlow v. State,* (1976) 264 Ind. 458, 346 N.E.2d 591. In this case, there was ample evidence to establish the threat of deadly force and

being armed with a deadly weapon, a knife. This was sufficient to sustain the conviction for a Class A felony.

### IV.

Defendant next claims that the trial court did not state sufficient reasons for the imposition of maximum sentences and that the sentences are excessive and contrary to law. He also argues that it was error to use his prior criminal history as an aggravating circumstance and as the basis of the conviction on the habitual offender count. The record shows that the court stated that the aggravating circumstances for imposing an enhanced sentence were the molesting of the two children over a long period of time and the defendant's prior criminal history.

This Court has clearly held that the use of prior convictions to enhance the sentence for the latest crime as well as to constitute an aggravating factor in the underlying sentence does not violate the ban on double jeopardy. *Anderson v. State,* (1981) Ind., 426 N.E.2d 674; *Griffin v. State,* (1981) Ind., 415 N.E.2d 60; *Ross v. State,* (1980) Ind., 413 N.E.2d 252. We have upheld the habitual offender statute because the enhanced sentence is for the last crime committed and is neither a separate criminal charge nor an additional penalty for earlier crimes. *Wise v. State,* (1980) Ind., 400 N.E.2d 114.

In this case, the enhanced sentence on the Class A felony was the basic thirty year penalty plus an additional twenty years as provided by our statute. The sentence given is discretionary with the trial court within the statutory provisions. *Harris v. State,* (1981) Ind., 425 N.E.2d 112. However, the record must disclose what factors were considered by the judge to be aggravating circumstances and that the determination of the sentence was based upon a consideration of the facts of the specific crime and the relation of the sentence imposed to the objectives which will be served by that sentence. *Washington v. State,* (1981) Ind., 422 N.E.2d 1218.

Here, the victims testified at trial to the fact that defendant had sexually abused them over a period of years. While this was not one of the factors specifically enumerated in the statute, those factors are not the only ones which the court may consider in determining the sentence. West's Ann.Ind.Code § 35–4.1–4–7(d). The court properly considered all the facts of this case including the evidence of defendant's history of sexually molesting his daughters in determining the sentences. Under the facts of this case, including the nature of the crime and the nature of the offender, we cannot say that the sentences constitute cruel and unusual punishment or are manifestly unreasonable. Ind.R.App. Rev.Sen. 2.

### V.

Defendant finally asserts that the court erred in not vacating the sentence on the habitual offender count. Because of the consolidated trial, defendant was originally sentenced as an habitual offender in two separate cause numbers. In his belated motion to correct errors, he asserted that the two habitual offender convictions violated his double jeopardy rights since they were based upon the same underlying felonies. The trial court vacated one of the habitual offender counts in response to this motion.

Here, it is clear that two separate crimes were committed involving two separate victims, so the original sentence the court imposed would have been proper as the habitual offender sentences were the enhancement of sentences in two separate crimes. We have held that since habitual criminality is a vehicle for the enhancement of punishment upon the conviction of an additional, substantive crime, prior convictions used to establish the fact of habitual criminality at one trial can be used again after a subsequent felony conviction. *Baker v. State,* (1981) Ind., 425 N.E.2d 98. Since the habitual offender sentence could have been properly applied to both cause numbers, there is no error in the sentence on one cause number. We will not disturb the court's ruling on the motion to correct

errors which vacated the sentence on the second habitual offender count as all the sentences in the second cause number are to be served concurrently to those on the first cause number, anyway.

For all of the foregoing reasons, there was no trial court error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C.J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.