**Nathaniel ADAMS, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 780 S 213.**

Supreme Court of Indiana.

March 5, 1982.

Ali A. Talib, Sp. Asst. Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-appellant Nathaniel Adams was found guilty by a jury of the crime of murder on August 1, 1979. On August 30, 1979, he was sentenced to a term of forty (40) years.

In this appeal he raises five issues for our consideration as follows: 1) error in impan-

elling the jury; 2) error in admission of State's Exhibit 1, a handgun; 3) refusal of Defendant's tendered instructions 1 and 4; 4) sufficiency of the evidence; and 5) improper amendment of the information by the State after arraignment.

The evidence showed that defendant-appellant Adams and Wanda Parker, the victim, were living together at 2436 Gay Street in the city of Fort Wayne, Indiana, on January 7, 1979. On that date, Wanda Parker was found lying in the front yard, fatally wounded by a .22 calibre bullet in her head. No one saw the actual shooting, but several neighbors heard the shots and saw Adams standing on the porch of the home with a gun in his hands immediately after the shots were fired. There was testimony that he shot the gun into the air earlier in the evening, that shots were fired at the time Wanda Parker was found lying in the yard with a bullet wound in her head, and that Adams went around the side of the house, fired more shots and came back without the gun. He then attempted to lift the body of Wanda Parker, but was unsuccessful and went back into the house. The gun was found in a trash can at the side of the house where appellant had been seen by witnesses. When the police retrieved the weapon from the trash can, Adams admitted that it was his gun and several other witnesses testified that they recognized the gun and that it was Adams', and that they had seen it in his possession many times before. Appellant stated that he and Wanda Parker had had an argument and that she had taken the gun out into the yard and he heard shots fired. The substance of his testimony was to indicate that Wanda Parker had shot herself. Expert witnesses testified that shell casings found on the porch and in the yard were fired from the weapon found in the trash can and further testified that the bullet entered the back of Wanda Parker's head. The testimony by medical witnesses was that the shot was fired from a distance, as there was no powder residue on the body of Wanda Parker and that the gun had to be held at least two feet, and probably further, from the body. It was the opinion of expert witnesses that the wound could not have been self-inflicted.

I.

Appellant claims that he was not furnished with questionnaires filled out by prospective jurors, and he therefore did not have a proper opportunity to know the backgrounds of the jurors so that he might effectively question them on *voir dire.* He made such complaint to the court at the beginning of the trial, but the court advised him that questionnaires were available to counsel at all times and that Adams had had equal opportunity with the State to obtain the questionnaires and examine them if he wished. Apparently some of the jurors did not fill out the questionnaires. At any rate, there is no evidence that the questionnaires contained anything more than identification data of the jurors and no showing that the defendant was deprived of any information or opportunity to obtain information. The questionnaire forms returned by the jurors are confidential as regards the public, but are made available in the Allen County Courts to counsel for the parties and were made available to them in this cause.

Appellant further complained that the jurors in the entire panel appeared to be from age forty to forty-five, while he was thirty-one years of age, and that none of them were black, and that therefore he was not tried by a jury of his peers. He seems to infer that blacks were eliminated from jury service and that perhaps people of certain age groups were purposely eliminated from selection, but he shows no facts above his bald assertion that such is the case. There is no evidence whatever in the record regarding the age or race of the prospective jurors in the panel. There are no facts set out as to what selection process was used in selecting the particular panel from which Adams' jury was selected from which it may be determined whether or not proper procedure was followed. We have only the statements of appellant that it appeared to him that the jurors were older than he was and that there were no blacks on the panel. Even if both of these state-

ments were true, it would not follow that defendant was denied an impartial jury as guaranteed by the Sixth Amendment of the United States Constitution and Article I, § 13 of the Constitution of Indiana, as he contends. This Court stated in *Tewell v. State*, (1976) 264 Ind. 88, 339 N.E.2d 792, 797:

"The right to an impartial jury precludes systematic and intentional exclusion of any particular class of persons, but it does not require that any particular class be represented."

*See also Morris v. State*, (1977) 266 Ind. 473, 364 N.E.2d 132.

Jury selection systems are required to draw prospective jurors from a fair cross section of the community and the burden of demonstrating purposeful discrimination is on the defendant. Jurors need not be mathematically proportioned to the character of the community and there is no requirement that any particular class be represented on every jury. *Daniels v. State*, (1980) Ind., 408 N.E.2d 1244. The jury panel must represent a reasonable cross section of the county and it must be apparent that there was no deliberate attempt to exclude certain groups from jury selection. *Burr v. State*, (1980) Ind., 403 N.E.2d 343; *Bond v. State*, (1980) Ind., 403 N.E.2d 812. There is no showing here that there was any violation of these standards in the selection of the jury panel from which defendant's jury was selected.

## II.

■ Appellant objected to the admission of exhibit No. 1 into evidence for the reason that no proper chain of custody was established. Exhibit 1 was the gun retrieved from the trash can at the scene of the homicide. This gun was identified by witnesses by a serial number and initials of police officers scratched on it at the time they took it into custody. We responded to this same issue in *Inman v. State*, (1978) Ind., 383 N.E.2d 820, as follows:

"Appellant claims the trial court erred in permitting a gun to be admitted into evidence because a proper chain of custo-

dy had not been established. Although there appears in the transcript some uncertainty as to the chain of custody of the gun, there is no doubt as to its authenticity. Two police officers identified the gun as the weapon recovered at the scene of the shooting. At the time of the investigation at the Turner residence, both officers had recorded the serial number of the gun in their notes, and thereby were able to identify it at trial."

*See also Wolfe v. State*, (1978) Ind., 383 N.E.2d 317; and *Johnson v. State*, (1977) 267 Ind. 415, 370 N.E.2d 892.

The trial court properly admitted this exhibit into evidence.

## III.

■ Appellant's tendered instructions 1 and 4 contemplated instructing the jury on reasonable doubt. In its preliminary and final instructions the trial court instructed the jury on the subject of reasonable doubt in substantially the same language and at times in exactly the same language as defendant's tendered instructions. Therefore, the substance of tendered instructions 1 and 4 was thoroughly and adequately covered by the court's instructions. The trial court's refusal to give a tendered instruction will be reversed only if, considering the evidence in the case, the substance of the instructions required to be given was not adequately covered by other instructions actually given. *Thomas v. State*, (1981) Ind., 420 N.E.2d 1216; *Gregory v. State*, (1980) Ind., 412 N.E.2d 744; *Richmond v. State*, (1979) Ind., 387 N.E.2d 1312; *Hash v. State*, (1972) 258 Ind. 692, 284 N.E.2d 770.

## IV.

■ Appellant next claims there was insufficient evidence to sustain the jury's verdict of guilty. When we review a question of sufficiency, we look only to the evidence which supports the jury's verdict and the reasonable inferences to be drawn therefrom. We look only to see that there is substantial evidence of probative value from which the jury could find the defendant guilty beyond a reasonable doubt. We

do not weigh the evidence or the credibility of the witnesses. This is the function of the jury. *Sloan v. State,* (1980) Ind., 408 N.E.2d 1264, 1265; *Goodpaster v. State,* (1980) Ind., 402 N.E.2d 1239, 1242; *Stanley v. State,* (1980) Ind., 401 N.E.2d 689, 693; *Ruetz v. State,* (1978) 268 Ind. 42, 373 N.E.2d 152, 156; *Love v. State,* (1979) Ind., 393 N.E.2d 178, 180. The evidence shows that appellant was observed on the porch of his home with a gun in his hand. Witnesses heard shots fired and saw Adams on the porch with the gun in his hand and saw the body of the victim lying in the yard a short distance from him. Witnesses observed him go around the house with the gun and return very shortly without it. A gun was retrieved from a trash barrel at the side of the house where appellant was seen to go by the witnesses. The gun was identified as one belonging to the appellant and one seen in his possession several times just prior to this incident. Eight twenty-two calibre casings were recovered from the front porch and these were determined to be shells fired from the pistol in question. The slug removed from decedent's head was a .22 calibre slug. There was evidence that the decedent and the defendant had quarreled at the time of this incident and had quarreled many times before. There was evidence that he had injured her by beating her on previous occasions and that the victim was concerned for her safety from him. There was ample evidence from which the jury could reasonably determine the defendant was guilty of murder beyond a reasonable doubt.

## V.

Finally, appellant claims the trial court erred when it permitted the State, over objection, to amend the information after arraignment. It is alleged by appellant that the State was permitted to amend the information by adding the word "and intentionally" after the word "knowingly" to the charging information. The record here shows no such amendment was ever made to this information. Appeal counsel admits in his brief that the record does not bear out the claim that the information was ever amended and, in fact, the information is set out in the brief. Nowhere in the body of the information do the words "and intentionally" appear. Nowhere in the record is there a motion by the State to amend the information, nor is there any order book entry authorizing such amendment. There is then, of course, no issue here to be decided.

Finding no error, we affirm the trial court.

All Justices concur.