**Donald FORRESTER, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 580S146.

Supreme Court of Indiana.

Oct. 7, 1982.

David M. Adams, Castor, Richards, Adams & Boje, Noblesville, for appellant.

Linley E. Pearson, Atty. Gen., Thomas D. Quigley, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted after trial by jury of Rape, Ind.Code § 35-42-4-1 (Burns 1979), Criminal Deviate Conduct, Ind.Code § 35-42-4-2 (Burns 1979), and Criminal Confinement, Ind.Code § 35-42-3-3 (Burns 1979) and sentenced to ninety-five (95) years imprisonment. This direct appeal presents the following issues:

(1) Whether the trial court erred in giving certain preliminary instructions.

(2) Whether the trial court erred in allowing the testimony of certain witnesses.

(3) Whether the trial court erred in allowing the testimony of the prosecutrix.

(4) Whether the trial court erred in allowing the testimony of the accomplice.

(5) Whether the trial court erred in admitting Defendant's pre-trial statements into evidence.

(6) Whether the trial court erred in refusing to suppress certain items of evidence.

(7) Whether the trial court erred in admitting certain exhibits into evidence.

(8) Whether the trial court erred in failing to admonish the jury to disregard witness' references to a jacket which was not admitted into evidence.

(9) Whether the trial court commented upon Defendant's failure to testify.

(10) Whether the evidence is sufficient to support the convictions of Rape and Criminal Deviate Conduct as Class A felonies.

(11) Whether the trial court erred in not giving instructions upon Battery as a lesser included offense.

(12) Whether the trial court erred in including certain items of data in the pre-sentence investigation report.

(13) Whether the trial court erred in conducting the sentencing.

(14) Whether the trial court erred in imposing an enhanced sentence and in making the sentences run consecutively.

The evidence most favorable to the State reveals that at about 3:15 a.m. on April 1, 1979 the prosecutrix drove out of the park-

ing lot at Castleton Square shopping mall in Indianapolis, after having been to a restaurant with some acquaintances. Another vehicle followed her down 82nd Street and then north on Allisonville Road.

About a block from her home she stopped her car, and the pursing vehicle, a Chevrolet Camaro, also stopped. Defendant approached the prosecutrix's car, stated that she knew him and showed her a driver's license. She returned the license and he said, "I knew what I was going to do," whereupon she looked up and saw that he was holding a "little automatic pistol." Defendant then removed the keys from the ignition and ordered her back to his automobile. An accomplice then drove Defendant's automobile while Defendant, in the backseat, forced the prosecutrix to perform fellatio upon him. He also raped her twice. She told him that she was having her menstrual period and refused to cooperate with his orders, but he threatened her life, and she submitted. The accomplice drove to a secluded area, and as Defendant reached into his jacket, the prosecutrix, thinking he was reaching for the gun and fearing for her life, opened the passenger door and jumped from the moving vehicle. She ran to some nearby houses to seek help and to summon the police.

\* \* \* \* \* \*

## ISSUE I

■ Defendant contends that the trial court erred in giving preliminary instructions numbered 8 and 12. He has failed, however, to set forth the "verbatim objections" made at trial as required by Ind.R. App.P. 8.3(A)(7). We, therefore decline to treat the issues other than to state that we have reviewed the instructions, the objections and the authority cited and have considered his arguments. We find the assignments of error to be without merit.

## ISSUE II

Defendant next contends that the trial court erred in allowing the testimony of several witnesses.

At trial over two separate objections, the physician, who examined the prosecutrix at a hospital after the attack, testified about the condition of her external genitalia and tests he performed. He also stated that her hymen had been recently torn. Defendant argues that this testimony allowed the jury to infer that the prosecutrix was a virgin at the time of the attack. He asserts that this is evidence of the victim's past sexual conduct inadmissible under the Rape Shield Statute, Ind.Code § 35–1–32.5–1 (Burns 1979):

"In a prosecution for a sex crime as defined in IC 35–42–4 evidence of the victim's past sexual conduct, opinion evidence of the victim's past sexual conduct may not be admitted, nor may reference be made thereto in the presence of the jury, except as provided in this chapter."

■ Defendant's position is not well taken. It is the victim, not the accused, that the statute was designed to shield. Sections (2) and (3) of the statute provide exceptions, in the event the Defendant, under prescribed circumstances, proposes evidence proscribed by Section 1. Conspicuous by its absence is a corresponding requirement applicable to the State. The exceptions, it will be observed, are to permit evidence of past sexual activity supportive of a defense, i.e. it grants relief, under appropriate circumstances, to the party affected. There was no need for relief provisions for the State, because the proscription, obviously was not intended to apply to it. It might, arguably, be otherwise under the revised rape shield statute, effective September 1, 1982 (I.C. 35–37–4–4); however the revision is designed to shield witnesses as well as victims.

Obviously, testimony that a prosecutrix had had no prior sexual experience would be inadmissible because irrelevant to the crime charged. However, where, as here, the testimony was of a physical finding that corroborated the evidence that intercourse had occurred, it is immaterial that it, coincidentally, revealed a prior existing condition that might have been prejudicial to the defendant. On balance, the relevance greatly outweighed the tendency for undue prejudice.

At trial a police officer testified concerning the tire prints which were found at the scene:

"Q. When those individuals, especially when Officer Tom Davidson arrived at the scene, had those prints changed since the first time you observed them?

"WILMER E. GOERING, II: Your Honor, I'll object to that and ask leave to ask a preliminary question.

"THE COURT: You may ask a preliminary question.

"Q. From the time you arrived on the scene until uh, Inspector David-, Investigator Davidson arrived, were you there constantly?

"A. No sir.

"WILMER E. GOERING, II: Your Honor, I would therefore object that it's beyond the ability of the witness to answer that question since he wasn't on the scene.

"THE COURT: The way the question was answered he may ask, answer it. The way the question was asked, it's a proper question, he may answer."

"A. The tire tracks had not changed from the first time I had saw them until after Investigator Davidson arrived upon the scene." R. at 366–67.

■ We agree with the trial court's ruling. The question did not ask the witness to draw a conclusion as to whether or not the tire prints had changed. Rather, it asked if the witness observed any change in the prints between the time he first observed them and the time Officer Davidson arrived. His answer was that the prints had not changed, that is, that they appeared the same to him when Officer Davidson arrived as they had appeared to him earlier.

Also at trial Defendant objected to the testimony of a police officer who compared a plaster cast of a tire print taken from the scene with a tire removed from Defendant's automobile. Defendant contends that the witness was not qualified to give his opinion:

"Forrester questions Oliver's training and expertise with regard to giving a comparison opinion on a tire print. No specific information was elicited from him as to any training that he had in this area. Nor was any standard set forth for making such a comparison. Appellant's Brief at 29.

The record does not bear him out. The officer testified:

"A. I'm assigned to the State Police Laboratory located in the first floor of the State Office Building in Indianapolis and I work in the trace evidence section and trace evidence deals with things like uh, latent fingerprints, arson examinations, physical comparisons and, uh, I also do hair and fiber examinations.

"Q. Have you had any special training or schooling in your profession for the State Police?

"A. Yes I'm a graduate of Anderson College, bachelor of arts degree in Mathematics, I attended Indiana State Police Recruit School, I've attended courses at the F.B.I. Academy, also been to McCrone Research Institute in Chicago dealing with courses in misroscopy and I've also done training in the laboratory itself." R. at 476–77.

■ The determination of whether a witness is qualified to testify as an expert lies in the sound discretion of the trial court. *Niehaus v. State,* (1977) 265 Ind. 655, 662, 359 N.E.2d 513, 516, *cert. denied,* (1977) 434 U.S. 902, 98 S.Ct. 297, 54 L.Ed.2d 188. We find no abuse of discretion.

At trial the State called a witness, a cocktail waitress, to connect Defendant and the accomplice to the area of the shopping mall, where the prosecutrix had gone on the night of the crime. On cross-examination the witness stated that a friend of the accomplice had told her that the two men were together and then that she had seen them together in the club where she worked:

"Q. So because, what makes you say they were together?

"A. Well. . .

"Q. On that occasion?

"A. Because uh, our manager, our disc jockey, our doorman, and Pam saw them leave together." R. at 494. Defendant asked that the answer be stricken as nonresponsive and as containing hearsay "not anticipated in my question." We do not understand this objection. Counsel asked a question and the witness clearly answered it.

## ISSUE III

Defendant next contends that the trial court erred in allowing the prosecutrix to testify. At trial, Defendant interposed two objections. When the prosecutrix was called, he contended that she was not competent to testify:

"WILMER E. GOERING, II: * * * For those reasons that she has been taken out to look at billboards, she's been given statements of other witnesses, she has stated that she altered her testimony, she's been placed under hypnosis. We would object to her competence to testify in this matter." R. at 206.

During the prosecutrix's testimony Defendant further objected to her proposed in-court identification, on the ground that it was based upon a tainted pre-trial line-up.

 The hypnosis session occurred before the line-up, and the hypnotist testified that his conversation with the prosecutrix, while she was in the trance, did not reveal anything more than that which a police officer had told him she had already stated. This Court has recognized that evidence obtained from a witness in a hypnotic trance is inherently unreliable and should be excluded from evidence as having no probative value. *Strong v. State,* (1982) Ind., 435 N.E.2d 969, 970. In this case, however, the most that could have been obtained from the hypnotic session was the prosecutrix's identification testimony. She was, nevertheless, a competent witness with respect to necessary and relevant evidence of the *corpus delicti* of the charged offenses, which evidence the prosecutrix had already provided to the police before the hypnotic session. Defendant's objection on grounds of competence did not seek to limit the witness' testimony, but rather to exclude it all together. A challenge to the competency of a witness to testify at all is properly overruled where the witness is competent to testify about any matter. *Estate of Niemic v. Western State Bank,* (1982) Ind.App., 435 N.E.2d 570, 572; *Baker v. State Bank of Akron,* (1942) 112 Ind.App. 612, 624, 44 N.E.2d 257, 261–62 (transfer denied). It was not error for the trial court to allow the prosecutrix to relate the incident.

With respect to the Prosecutrix's statements in a pretrial deposition and her allegedly having seen statements from another witness, the accomplice, these events reflect upon the weight and credibility of her testimony, not upon its admissibility.

In this case we have two separate and independent pretrial identification procedures. Defendant's objection to the Prosecutrix's in-court identification relates only to the assertedly tainted line-up.

The record of the motion to suppress contains a black and white 8″ × 10″ photograph of the line-up. There are seven male participants, all sitting or slouching in chairs and all wearing mustaches. We find nothing suggestive or tainted from the photograph.

Defendant also argues that:

"In *Hopkins v. State* (1975) 163 Ind. App. 276, 323 N.E.2d 232 the defendant was subjected to a lineup without legal counsel and where there was some evidence that the police suggested to the witness that there was a suspect in the group that was exhibited. The Court of Appeals held that either procedure tainted the lineup. In this case (the prosecutrix) was told by a police officer the night before the lineup that an arrest had been made in the case. The circumstance of viewing a lineup the next day, at a time when Forrester was apparently without counsel, would taint the lineup." Appellant's Brief at 34.

The record of the motion to suppress supports a finding that the police told the prosecutrix that they had arrested a suspect and that they did not tell her that the

arrestee would be in the line-up. She had asked numerous questions about the suspect and in response the police repeatedly told her that they would not discuss her inquiries.

Lastly, Defendant's in-trial objection makes no mention of counsel's not being present at the line-up. *Dean v. State,* (1982) Ind., 433 N.E.2d 1172, 1185. We find no reversible error in the trial court's rulings.

### ISSUE IV

■ Defendant next contends that the trial court erred in allowing the testimony of the accomplice into evidence, because the record contains no indication that the accomplice consented to testify, citing Ind. Code § 35–1–31–3 (Burns 1979) (in pertinent part)

"The following persons are competent witnesses: * * *.

"Third. Accomplices, when they consent to testify. * * *."

The record of the accomplice's testimony is similar to *Jay v. State,* (1965) 246 Ind. 534, 206 N.E.2d 128 where we rejected a similar claim:

"Appellant complains that he was not permitted to make an offer of proof that the witness was an accomplice and would not consent to testify. The record fails to bear out appellant's contention, for it fails to disclose any effort was made whatever by appellant to show that this witness had not consented to testify and therefore no question is presented.

"The fact that the witness took the stand creates the presumption that she did so voluntarily. The fact that she answered all questions propounded to her forthrightly and without hostility is strongly indicative that she was a voluntary witness." Id. at 537, 206 N.E.2d at 129–30.

### ISSUE V

Defendant next contends that the trial court erred in allowing a police officer to relate statements that he had made. He argues that the statements were made after an arrest without probable cause and that the record is silent as to whether he waived his rights after the officer read *Miranda* advisements. The second ground was not part of the objection at trial and consequently presents nothing for review:

"WILMER E. GOERING, II: Your Honor, to which we'll object on the grounds that the defendant's interrogation at that time was the result of an illegal and improper arrest and his detention was illegal and any conversations or the fruits thereof are not properly admissible at trial." R. at 441.

Defendant's objection relates to the following testimony:

"A. * * * I asked Forrester if about the time or indicated to him the time of the attack which was on a Saturday night, March 31st, into the early morning of Sunday, the 1st. And I asked him if he knew anything about the attack, and he replied no he didn't know anything about any rape. I asked him if he had ever been in The Exchange before that night we picked him up, he said no. I asked him where he was the Saturday night of the attack and he said that he was at home with his wife and child." R. at 442.

The record reveals that Defendant was arrested with probable cause. At trial State Trooper Davidson, the arresting officer, explained that he had distributed copies of composite sketches to merchants and businessmen in the shopping mall near the restaurant. The sketches were prepared by an artist on the afternoon after the attack, as the prosecutrix described her assailants.

■ On the evening of April 10, 1979 Davidson received a telephone call from the manager of a night spot, the Exchange, located just north of the restaurant where the prosecutrix had gone. The manager told him that Defendant and the accomplice were at the bar. At trial the manager testified that he was certain that these two men had been there on the night of the attack. On that night after closing time, both were hanging out next to a "late mod-

el camaro" automobile in front of the club's entrance at about 3:15 a.m. The manager had told them to leave and they did, heading south towards East 82nd Street. The manager had also told Davidson that the two were driving the same vehicle that they had driven on the night of the attack. The prosecutrix had told the police that she pulled out of the restaurant parking lot at about 3:15 a.m. and that she was followed by a "camaro", where the attack eventually occurred. These facts circumstantially link Defendant to the crime and provided Officer Davidson probable cause to arrest Defendant at the Exchange on April 10, 1979. *See Dewey v. State,* (1976) 264 Ind. 403, 409, 345 N.E.2d 842, 846; *Throop v. State,* (1970) 254 Ind. 342, 344, 259 N.E.2d 875, 876. We find no reversible error in the admission of Defendant's statements.

### ISSUE VI

After Defendant was arrested, his automobile was impounded and a search warrant was obtained. Over objection at trial the State introduced a blue jacket or coat which had been obtained from inside the vehicle and four black and white photographs of the vehicle. Defendant argues that the police obtained this evidence as the fruit of an illegal arrest and pursuant to an improper search warrant.

In Issue V, supra, we have found that the arrest was legal, consequently this argument has no merit.

■ Defendant's second argument is premised upon a lack of probable cause to issue the search warrant. The record shows, however, that the police had probable cause to believe that the automobile was the scene of the attack, Issue V, supra, therefore, they could have searched it without a warrant. *Montague v. State,* (1977) 266 Ind. 51, 55–56, 360 N.E.2d 181, 184–85. We find no error in the trial court's admission of the photographs and the coat into evidence.

### ISSUE VII

Defendant next assigns error to the admission of several exhibits.

The first is State's Exhibit 7, a photograph of the scene of the abduction, that is, where the prosecutrix stopped her car and was forced into Defendant's car. Defendant complains that the scene had been altered in that the prosecutrix's car was removed and a police car was added. The photograph was identified by a police officer, who indicated with red ink where the tire prints, from the assailant's car were found, in relation to where the prosecutrix had stopped her car.

■ "The fact that some conditions had changed at the time photographs were taken does not necessarily render the photographs inadmissible, but the changes, if material, should be explained in such a way that the jury would not be misled." *Hubble v. State,* (1973) 260 Ind. 655, 657, 299 N.E.2d 612, 614. Defendant claims that the addition of the police car was a substantial change; however, that change was irrelevant to the purpose for which the photograph was admitted as explained by the police officer's testimony. *See e.g. Holland v. State,* (1980) Ind., 412 N.E.2d 77, 79–80; *Porter v. State,* (1979) Ind., 391 N.E.2d 801, 813. The jurors were not misled by the exhibit and we find no error in its admission. *See Parks v. State,* (1979) Ind., 389 N.E.2d 286, 290; *Gill v. State,* (1977) 267 Ind. 160, 166–67, 368 N.E.2d 1159, 1162.

■ Defendant next contends that the trial court erred in admitting State's Exhibit No. 2, a gun. The gun was admitted after the prosecutrix stated that it looked like the gun used and the accomplice testified that it was the gun they had the night of the assault. He pointed out that it had "rust right here along the trigger." At trial Defendant objected on the following grounds:

> "WILMER E. GOERING, II: Your Honor, we would object to, uh, State's Exhibit Number 2 cause there's been no proper foundation laid. It's not been properly identified, there's been no chain of custody established." R. at 437.

In *Woodard v. State,* (1977) 267 Ind. 19, 24, 366 N.E.2d 1160, 1164 we stated:

"These items were all hard physical evidence whose characteristics were capable of eyewitness identification, unlike the fungible narcotics involved in *Graham v. State* (1970), 253 Ind. 525, 255 N.E.2d 652. It is a sufficient foundation for the introduction of such items into evidence that a witness identifies the item and it has relevance to the issues of the case. (citation omitted).

" 'If the offered item possesses characteristics which are fairly unique and readily identifiable, and if the substance of which the item is composed is relatively impervious to change, the trial court is viewed as having broad discretion to admit merely on the basis of the testimony that the item is the one in question and is in a substantially unchanged condition.' McCormick, Evidence § 212 at 527 (2d ed. 1972)." *Accord Duncan v. State,* (1980) Ind., 409 N.E.2d 597, 601.

The gun, which the accomplice identified, was hard physical evidence, with characteristics capable of identification. *Adams v. State,* (1982) Ind., 431 N.E.2d 820, 822; *Inman v. State,* (1978) Ind., 383 N.E.2d 820, 823, *cert. denied,* (1979) 444 U.S. 855, 100 S.Ct. 114, 62 L.Ed.2d 74. We find no error in the admission of the gun into evidence.

Defendant also challenges the admissibility of State's Exhibits 8, 9, and 12, 9 and 12 for want of a chain of custody and all three for want of relevance.

Exhibit 8 is a photograph of a tire print or track found at the scene. Exhibit 9 is a plaster cast of the tire track. Exhibit 12 is a tire removed from Defendant's automobile after it was impounded. A police officer testified that he compared the tire with the plaster cast and concluded that the tire track was made by Exhibit 12 or a tire of the same size and tread pattern.

■ The officer who had made the plaster cast had initialed it. At trial he identified the cast and the initials. As explained in Issue VII, this is an ample foundation for such a nonfungible item.

■ The same officer testified that Exhibit 12, the tire, was taken from the right front wheel of Defendant's car. He initialed the whitewall and placed the tire in an evidence locker. Thereafter the other officer performed the comparison. The tire was nonfungible and was identified by the witness. For the same reasons stated, there was an adequate foundation for admission of the tire.

■ With respect to the lack of relevance claim, Defendant's Brief contains the following:

"Forrester argues that the reception of Exhibits 8, 9 and 12 should have been excluded because it was too remote to the issue of his guilt or innocence. The fact that Forrester had a particular type of tire on his vehicle, which also happened to be the same type of tire track found in the area where (the prosecutrix) was abducted, could not be a direct link to his guilt." Appellant's Brief at 52.

These exhibits were clearly relevant to corroborate, circumstantially, the testimony of the prosecutrix and the accomplice about what had occurred at the abduction. Defendant also adds that the tire is the fruit of an illegal arrest; however, we have hereinbefore determined that the arrest was legal. Issue V, supra. We find no error in the admission of these exhibits.

## ISSUE VIII

Defendant next contends that the trial court erred in not granting his motion for a mistrial or alternatively his request to admonish the jury not to consider witness' references to an article of clothing, State's Exhibit 1, variously referred to as red or brown leather jacket or coat. Before it was offered into evidence, the prosecutrix identified the coat as looking like the one her assailant had worn, and the accomplice identified it as the one Defendant had worn the night of the attack. The coat was offered into evidence after the arresting officer had testified that it looked like the one Defendant had worn on the night of the arrest. Defendant asked the witness some preliminary questions and then objected to the garment's admission on the grounds that it was the fruit of an unlawful arrest

and for absence of a showing of a chain of custody. The trial court sustained the objection without giving a reason; however the substance of the preliminary questions reveals that the officer had obtained the coat from a third party at the jail and could not state that it was the same coat he had seen on Defendant at the arrest.

■ Defendant claims that the trial court's failure to admonish the jury or to grant a mistrial, after admission of the coat was rejected, left a prejudicial impression before the jury. He fails to identify the prejudice and cites no authority which precludes witnesses from discussing or identifying objects which are not subsequently offered into evidence or are excluded when offered. Regardless of the admissibility of the coat itself, the witnesses were still entitled to testify concerning it. *See Dixon v. State,* (1945) 223 Ind. 521, 528, 62 N.E.2d 629, 631 (witnesses may testify that certain items were stolen, even if the items are not admitted into evidence); *Holler v. State,* (1941) 219 Ind. 303, 304–05, 38 N.E.2d 242 (witnesses allowed to identify a plate similar to the ones alleged to have been stolen, which were not available). Defendant was not entitled to a mistrial or to have the jury admonished to disregard the witness' references to the coat.

## ISSUE IX

At trial the following occurred during direct examination of one of Defendant's witnesses:

"Q. Did you have any conversation with Don on the telephone?

"A. Yes I did.

"STEVEN R. NATION: To which I'm going to object, hearsay.

"THE COURT: He's in court. Is he available to testify? I'll sustain the objection.

"WILMER E. GOERING, II: No further questions. Thank you." R. at 605–06.

Defendant contends that the trial court made a comment upon his eventual failure to take the stand. Defendant made no in-trial objection to the comment and conse-

quently presents nothing for review. *Lax v. State,* (1981) Ind., 414 N.E.2d 555, 556; *Faught v. State,* (1979) Ind., 390 N.E.2d 1011, 1014.

## ISSUE X

Defendant next raises two unrelated challenges to the sufficiency of the evidence.

He first contends that the Rape and Criminal Deviate Conduct were accomplished while he was unarmed, based upon the prosecutrix's statement that she did not see the gun after she left her car and the accomplice's statement that on March 31, 1979 and April 1, 1979 he had the gun. The accomplice's statement is lifted out of context on cross-examination and does not contradict the accomplice's testimony that Defendant pointed the gun at the prosecutrix.

■ The evidence demonstrates that the gun was intended to intimidate the victim and that it accomplished that purpose. *Taylor v. State,* (1982) Ind., 438 N.E.2d 294. The prosecutrix testified that Defendant threatened to kill her if she did not cooperate. To sustain a conviction for a Class A felony, it is not necessary that the weapon be held on the victim of a sex crime at all times. *Dean v. State,* (1980) Ind., 398 N.E.2d 1270, 1272. The evidence is sufficient to allow the jury to find that Defendant was armed. *Taylor v. State, supra; Deel v. State,* (1976) 265 Ind. 577, 581, 357 N.E.2d 240, 242; *Critchlow v. State,* (1976) 264 Ind. 458, 466–67, 346 N.E.2d 591, 597.

■ Defendant's second argument under this issue asks us to rejudge the credibility of the accomplice's testimony, which we will not do unless that testimony is inherently incredible. *Bentley v. State,* (1981) Ind., 414 N.E.2d 573, 574.

"During (accomplice's) testimony, he was unable to give specific answers to questions with regard to times and places on March 31, 1979 (R. 313, L. 23 to R. 314, L. 5). He also indicated that on that date he had consumed large quantities of drugs and alcohol (R. 318, L. 8 to R. 319, L. 23). He did not recall where he drove

after the alleged abduction of (the prosecutrix) (R. 328, L. 13–20). He also admitted writing a letter to Forrester wherein he admitted that the police told him what to say that they wanted Forrester (R. 624, L. 5 to R. 628, L. 3)." Appellant's Brief at 63.

These matters do not render the witness' testimony inherently incredible. *Taylor v. State,* (1981) Ind., 425 N.E.2d 141, 143; *Kilgore v. State,* (1979) Ind., 391 N.E.2d 820, 821.

### ISSUE XI

Defendant next contends that the trial court erred in not giving an instruction upon the lesser included offense of Battery. The record shows that Defendant objected to the trial court's proposed final instructions for "failure to instruct the jury as to Battery, a class C felony, and Battery, a class C misdemeanor."[1] The record also shows that Defendant tendered no such instructions, which renders his claim unavailable for review. *Law v. State,* (1980) Ind., 406 N.E.2d 1185, 1186; *French v. State,* (1980) Ind., 403 N.E.2d 821, 824.

### ISSUE XII

Defendant next complains about the inclusion of numerous items of data in the pre-sentence investigation report.

■ He first argues that reports of "Incidents" of his behavior at the Indiana Reformatory and a 1972 sentencing report concerning a charge of Assault and Battery are outside the scope of matters specified by Ind.Code § 35–4.1–4–10 (35–50–1A–10) (Burns 1979). The statute allows the probation officer to include any matter he deems relevant to the sentencing decision. *Lottie v. State,* (1980) Ind., 406 N.E.2d 632, 640. This same discretion extends to the trial court. *Yates v. State,* (1982) Ind.App., 429 N.E.2d 992, 993–94. The data at issue are not outside the ambit of the statute.

■ Defendant also argues that statements of a clinical psychologist, who interviewed him, are hearsay and should not have been included in the report. The conclusions the psychologist drew are not flattering; however, they are derived directly from interviews and Defendant's "history of delinquency and criminality" and his "social history", which are proper matters to include in the report under the statute.

■ Defendant next argues that the prosecutrix's prior sexual history should not have been included in the report pursuant to the rape shield statute. The report contains a statement of the victim's version of the offense in which she states that she told her assailant she was a virgin in hopes of dissuading him. The statement was made during the course of the charged offenses and is a proper part of the report which may include "the circumstances attending the commission of the offense." Ind.Code § 35–4.1–4–10(a) (35–50–1A–10(a) (Burns 1979)). We note, additionally, that the trial court did not refer to this information; consequently, Defendant has shown no harm.

■ Defendant next argues that the trial court erred in including alleged information about his criminal record in the report without inquiring about the final disposition of charges disclosed by the report. The two items in issue consist of an uncertified document of his criminal history from the Indianapolis Police Department, which was part of the 1972 report, and the statement of his previous record contained in the body of the sentencing report. Contrary to Defendant's assertion, *Glenn v. State,* (1975) 163 Ind.App. 119, 322 N.E.2d 106 does not require such an inquiry. We have held that the pre-sentence investigation report may contain reference to charges which resulted in dismissal or acquittal. *Misenheimer v. State,* (1978) 268 Ind. 274, 289–90, 374 N.E.2d 523, 532. Defendant relies upon *McNew v. State,* (1979) Ind., 391 N.E.2d 607; however in that case and in *Clark v. State,* (1982) Ind., 436 N.E.2d 779, 783, we explained that though the trial court may not consider an acquittal as an aggravating circumstance, the pre-sentence investigation report may contain the acquittal.

1. The State notes and we agree that there is no offense of Battery, Class C Misdemeanor.

We find no error in the contents of the pre-sentence investigation report.

## ISSUE XIII

Defendant next argues that the trial court erred in admitting State's Exhibits A, B, E, G, H, I and K into evidence at the sentencing hearing.

 He first argues that all the exhibits, except K, should not have been admitted apart from the pre-sentence investigation report. In determining the sentence the trial court may consider information outside the pre-sentence investigation report. *Bish v. State,* (1981) Ind., 421 N.E.2d 608, 618. In this case the exhibits are merely corroborative or cumulative of information already disclosed by the report. Defendant did not and does not contest the accuracy of the information contained in the exhibits. He has shown no error and no harm.

With respect to Exhibits A and B, which are copies of informations filed in the Hamilton Circuit Court, Defendant argues that *Glenn v. State, supra,* requires the trial court to inquire about the disposition of these charges, which were pending. We have rejected this argument.

 With respect to Exhibit E, which consists of a multipage document relating to a charge of forcible rape in California in 1970, Defendant asserts that the trial court considered it as part of the aggravating circumstances. He notes that State's Exhibit F, a "rap" sheet from the Indiana State Police, bears a notation that the California charge was dismissed for lack of evidence. At the sentencing hearing the trial court referred to an aggravating circumstance as "the third of sex crimes." From the information available in the record the trial court may very well have done what Defendant claims; however the trial court cited additional aggravating circumstances, that Defendant was on parole at the time of the commission of the offenses and that he needed the treatment he would be able to receive in confinement. Even if the trial court did consider one improper circumstance, the other aggravating circumstances cited are adequate to support the sentence imposed. *McNew v. State,* (1979) Ind., 391 N.E.2d 607, 612; Ind.Code § 35–4.1–4–7 (35–50–1A–7 (Burns 1979)).

Defendant's last assignment of error under this issue concerns Exhibit K, an envelope which bears numerous pencil markings upon both sides. A witness testified that while he was in the Hamilton County Jail he had conversed with Defendant, who gave him the envelope. The witness testified that Defendant had told him to telephone Defendant's trial counsel and to state that the witness thought the attorney was "sending him (Defendant) up the river." Defendant also asked the witness to threaten the prosecutrix by phone to tell the truth and to sprinkle poison on Defendant's food to allow him to claim that someone was trying to poison him. The envelope contains information to which the witness referred only generally. Without the witness' testimony about his conversation with Defendant, the telephone number of Defendant's trial attorney and other information upon the envelope would have had no significance. The envelope, Exhibit K, was merely cumulative of testimony admitted without relevant objection. The witness had also admitted that he wrote on the envelope. Defendant objected to the exhibit on the ground that it had been altered. However, he admits that the record does not show that the alteration was material and we cannot determine from the exhibit itself that the alteration was material.

## ISSUE XIV

Under this heading Defendant argues several errors concerning his sentencing.

 Defendant first argues that the record does not clearly show that he was on parole at the time the offenses were committed, April 1, 1979. The record of the sentencing hearing shows via State's Exhibit F that Defendant was paroled on October 24, 1978 after serving six (6) years and ten (10) months of a sentence of from one (1) to ten (10) years imprisonment. The pre-sentence investigation report lists the Indiana

State Parole Board Records as a source of information and contains the following entry under a heading, "PREVIOUS RECORD":

"12–2–71 Marion County, Indiana A & B with Intent to Commit a Felony, Sodomy Sentenced 7–6–72 1–10 years Released 10–24–78 Served 6 yrs. 10 mos. *Parole Officer James Konnersman*" (emphasis added). Supplemental Record at 2.

At the sentencing hearing Defendant did not even attempt to contradict or correct the trial court's finding concerning his being on parole at the time of the offenses charged. *Green v. State,* (1981) Ind., 422 N.E.2d 1190, 1192; *Cox v. State,* (1981) Ind., 419 N.E.2d 737, 740. Under these circumstances, which consist of more than the Prosecutor's bare assertion, *Harris v. State,* (1979) Ind., 396 N.E.2d 674, 677, the record supports the trial court's finding that Defendant was on parole at the time of the instant offenses.

Defendant next argues that the trial court erred in imposing consecutive sentences, citing *Whalen v. United States,* (1980) 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715. He claims that the offenses arose from one criminal transaction which assertedly makes the imposition of consecutive sentences improper.

In *Whalen* the United States Supreme Court, interpreting statutes applicable to the District of Columbia, ruled that a Defendant convicted of felony murder and the underlying felony could only be sentenced upon the felony murder charge. This rule, which has no application to the case at bar, correctly states the law in Indiana. *Biggerstaff v. State,* (1982) Ind., 432 N.E.2d 34, 37 (cases cited therein).

"The test for determining whether or not separate sentences may be imposed upon multiple counts is whether the offenses charged are themselves the same, not whether they all arose from the same criminal act or course of conduct. *Elmore v. State,* (1978) 269 Ind. 532, 382 N.E.2d 893." *Pruitt v. State,* (1978) 269 Ind. 559, 564–65, 382 N.E.2d 150, 154.

The offenses charged herein are not the same and do not include one another. *Riley v. State,* (1982) Ind., 432 N.E.2d 15, 17 (Rape, Robbery, and Criminal Deviate Conduct); *Geisleman v. State,* (1980) Ind., 410 N.E.2d 1293, 1297 (Rape and Battery); *Adams v. State,* (1979) Ind., 386 N.E.2d 657, 661 (Burglary, Rape, Robbery, and Sodomy); *Pruitt v. State, supra* (Kidnapping, Rape and Robbery). Defendant's argument has no merit.

Defendant next argues that the trial court failed to disclose what aggravating circumstances it considered in increasing the sentence above the basic sentence. The record shows that the trial court imposed forty (40) years on the Rape, forty (40) years on the Criminal Deviate Conduct, and fifteen (15) years on the Criminal Confinement. The trial court then stated the following reasons why the sentences would run consecutively:

"The crime was committed while on parole, it is the third of sex crimes of which shows a record and it is this Court's belief that the individual, Donald Forrester, needs certain kind of treatment that he may be able to get during that confinement." R. at 871.

This record shows a technical violation of Ind.Code § 35–4.1–4–3 (35–50–1A–3 (Burns 1979)) and the cases interpreting it which require the trial court to make a statement of aggravating circumstances in support of an enhanced sentence. *Bundy v. State,* (1981) Ind., 427 N.E.2d 1077, 1080; *Sage v. State,* (1981) Ind., 419 N.E.2d 1286, 1288; *Page v. State,* (1980) Ind., 410 N.E.2d 1304, 1307–08; *Dailey v. State,* (1980) Ind., 406 N.E.2d 1172, 1176. The record also shows that the trial court properly considered factors favoring consecutive sentences, which factors, commission of the offense while on parole, a prior criminal record, and the need for rehabilitation in confinement, could have been used as aggravating circumstances to enhance the basic sentence. *Humes v. State,* (1981) Ind., 426 N.E.2d 379, 384 (cases cited therein). Based upon this record, a remand to the trial court would accomplish no purpose other than to have the judge

state that the aggravating circumstances supporting consecutive sentences also support the enhanced sentences. Thus, we find no error; however, we stress that the better and preferable practice is for the trial court to state unequivocally that the aggravating circumstances justify both the enhanced sentences and consecutive sentences.

Lastly, without citation to authority, Defendant argues that:

> "He further would argue that two of the basic statutes, those dealing with rape and deviate conduct, increase the offense from a Class B felony to a Class A felony due to the use of a firearm during the commission of it. Therefore, an aggrevating (*sic*) circumstance has been added to the offense by the legislature at its inception, and the lenghting (*sic*) of the sentence imposed after a conviction amounts to a double application of aggrevating (*sic*) circumstances." Appellant's Brief at 76.

This argument has no merit. *Washington v. State,* (1981) Ind., 422 N.E.2d 1218, 1221.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.