**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**JULIE P. VERHEYE**
Mishawaka, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana



FILED

Feb 17 2012, 9:17 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| ROBERT KEMP, | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | ) No. 71A03-1107-CR-338 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable J. Jerome Frese, Judge
Cause No. 71D03-1101-FA-1

**February 17, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Robert Kemp appeals his convictions for rape, as a Class A felony, and criminal deviate conduct, as a Class A felony, as well as the sentence imposed for those crimes. Kemp raises three issues for our review, namely:

1. Whether the State presented sufficient evidence to support his convictions;

2. Whether the trial court committed fundamental error when it permitted the State to ask the victim about her sexual history and to comment on that testimony in its closing argument; and

3. Whether his 130-year aggregate sentence is inappropriate in light of the nature of the offenses and Kemp's character.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On January 1, 2011, K.E., a nineteen-year-old, first-time employee took a break from her duties as a Walgreen's cashier to use the restroom. There, Kemp, who had hid himself in one of the stalls, attacked K.E. and forced her into the handicapped stall. He commanded her to perform oral sex on him, attempted to perform anal sex on her, and then vaginally raped her. During the course of the assault, Kemp repeatedly told K.E. that he would kill her and her family if she called out for help.

During the assault a coworker entered the bathroom. K.E. called out for help, and Kemp fled from the bathroom. The coworker called for assistance from other employees and customers and called the police. Customers chased Kemp down near the parking lot and detained him until police arrived.

On January 4, the State charged Kemp with rape, as a Class A felony; criminal deviate conduct, as a Class A felony; and for being an habitual offender. A jury found him guilty as charged, and the trial court ordered Kemp to serve the maximum possible term of 130 years in the Department of Correction. This appeal ensued. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### Issue One: Sufficiency of the Evidence

On appeal, Kemp first asserts that the State failed to present sufficient evidence to support its allegation that he committed rape and criminal deviate conduct under the threat of deadly force. When reviewing a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. Jones v. State, 783 N.E.2d 1132, 1139 (Ind. 2003). We look only to the probative evidence supporting the verdict and the reasonable inferences that may be drawn from that evidence to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. Id. If there is substantial evidence of probative value to support the conviction, it will not be set aside.

Kemp challenges only whether the State demonstrated that he threatened to use deadly force against K.E. during the sexual assault, which elevated both offenses to Class A felonies. See Ind. Code §§ 35-42-4-1(b)(1); 35-42-4-2(b)(1). In particular, Kemp asserts that K.E. "never saw a weapon" during the assault; that he "did not do anything or say anything to create the impression that a weapon was readily available"; and that "[t]he words . . . spoken to [K.E.] that she would be killed were not accompanied by

3

actions that conveyed the intent or ability to follow through on them." Appellant's Br. at 7-8.

Kemp's argument is not well taken. In Zollatz v. State, our supreme court affirmed the defendant's convictions for rape and unlawful (now criminal) deviate conduct while threatening deadly force on the following evidence:

> D.K. [the victim] testified that [the defendant] "told me to suck on his penis or he would pull a knife on me." From this testimony the jury could have found that [the defendant] had threatened the use of deadly force to compel D.K. to commit the act and all subsequent acts in the course of the attack. A weapon need not be displayed in order to establish the threat of deadly force.

274 Ind. 550, 554, 412 N.E.2d 1200, 1202 (1980); see also Moore v. State, 551 N.E.2d 459, 461 (Ind. Ct. App. 1990) ("The required force for a conviction of rape by force need not be physical but may be constructive or implied. It is not required that the force applied be brute strength but may also be accomplished by fear produced by threats.") (citations omitted). Zollatz is controlling authority on this issue. K.E. testified that Kemp repeatedly threatened her during the assault that he would kill her and her family if she called for help, thereby compelling her submission to the assault. The State presented sufficient evidence to support its allegation.

### Issue Two: Fundamental Error

Kemp next alleges that the trial court committed fundamental error when it permitted the State to discuss K.E.'s sexual history. Kemp acknowledges that, because his trial counsel did not object, on appeal he must demonstrate fundamental error. "A fundamental error is a substantial, blatant violation of basic principles of due process rendering the trial unfair to the defendant." Taylor v. State, 717 N.E.2d 90, 93 (Ind.

4

1999). "[W]e view this exception as an extremely narrow one, available only when the record reveals clearly blatant violations of basic and elementary principles of due process, and the harm or the potential for harm cannot be denied." Canaan v. State, 683 N.E.2d 227, 235 n.6 (Ind. 1997) (quotation and alterations omitted).

Kemp contends that it was error for the court to allow the State to engage K.E. in the following colloquy:

Q    When you were in that handicapped stall with the defendant, was there any conversation about your sexual history?

A    Yeah, he asked me if I was a virgin.

Q    Did you answer him?

A    Yes.

Q    Why did you answer him?

A    I don't know.

Q    What was your answer?

A    Yes.

Transcript at 209-10. The prosecuting attorney, during her closing argument, referred to that testimony by stating that K.E. had "walked into that bathroom a virgin and she walked out of that bathroom a victim." Id. at 708-09.

Kemp contends that the State's evidence violates Indiana's Rape Shield Statute, Indiana Code Section 35-37-4-4, as well as Indiana Evidence Rules 412 and 403, all of which prevent the State from eliciting evidence of the victim's past sexual conduct. Kemp avers that the State sought K.E.'s testimony simply to "arouse the passions and

5

prejudices of the jury against [Kemp,] which resulted in his being denied a fair trial."
Appellant's Br. at 9.

As an initial matter, Kemp's attempt to use the Rape Shield Statute or its counterpart in the rules of evidence, Rule 412, falls flat. Those rules exist to protect the victim from being put on trial, not to suppress evidence of the defendant's guilt. Forrester v. State, 440 N.E.2d 475, 479 (Ind. 1982); Graham v. State, 736 N.E.2d 822, 825 (Ind. Ct. App. 2000), trans. denied. As such, we do not consider those assertions.

Kemp's argument under Rule 403 does not demonstrate fundamental error. Under that Rule, a court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Ind. Evidence Rule 403. In his own defense, Kemp testified that K.E. had propositioned him outside the store and agreed to meet him in the bathroom. The State's evidence of K.E.'s lack of sexual history rebutted Kemp's testimony. As the prosecuting attorney stated during her closing argument, "[i]t just doesn't make any sense" that "[K.E.] was going to prostitute herself out for her first time . . . on the bathroom floor of the Walgreen's." Appellee's Br. at 12. Kemp cannot demonstrate on appeal that any prejudice from the State's evidence was unfair since it was relevant to rebutting Kemp's own testimony, and Kemp certainly cannot demonstrate an error so blatant that it denied him a fair trial.

**Issue Three: Sentence**

Finally, Kemp asserts that his 130-year aggregate sentence is inappropriate in light of the nature of the offenses and his character.[1] Although a trial court may have acted

_____

[1] The State contends that Kemp's argument on this issue is actually a claim that the trial court abused its discretion during sentencing. While we agree that Kemp's argument could have been better

6

within its lawful discretion in determining a sentence, Article VII, Sections 4 and 6 of the Indiana Constitution "authorize[] independent appellate review and revision of a sentence imposed by the trial court." Roush v. State, 875 N.E.2d 801, 812 (Ind. Ct. App. 2007) (alteration original). This appellate authority is implemented through Indiana Appellate Rule 7(B). Id. Revision of a sentence under Appellate Rule 7(B) requires the appellant to demonstrate that his sentence is inappropriate in light of the nature of her offense and her character. See Ind. Appellate Rule 7(B); Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We assess the trial court's recognition or non-recognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed was inappropriate. Gibson v. State, 856 N.E.2d 142, 147 (Ind. Ct. App. 2006). However, "a defendant must persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review." Roush, 875 N.E.2d at 812 (alteration original).

Moreover, "sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." Cardwell v. State, 895 N.E.2d 1219, 1222 (Ind. 2008). Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented. See id. at 1224. The principal role of appellate review is to attempt to "leaven the outliers." Id. at 1225. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." Id. at 1224.

---

drafted, it is not obvious to this court that he is making an argument other than the argument he purports to make. As such, we only consider the argument Kemp actually proffers, namely, whether his sentence is inappropriate under Appellate Rule 7(B).

In imposing Kemp's sentence, the trial court reasoned as follows:

As to mitigators, I find no statutory mitigators . . . . However, I must say and I do say that I note the defendant had a very difficult and harsh childhood and that is not his fault. I believe . . . the defendant had a very unstable home life. He was forced to move very often. He had no present father—his biological father was not present. His mother had father figures who were absolutely not nurturing and in fact . . . the defendant was molested by two of those live-in boyfriends.

And that is outrageous, and those people are despicable. He was also molested allegedly by a gym teacher who occupied a position of authority in a public school—presumably a public school . . . , and that is despicable also. Perhaps even worse if that's possible because he was in a position of authority under a state institution supposing to protect and nurture children and not harm them. And for that I am very sorry.

But . . . as a society part of our belief in the worth of the individual is the ability of the individual to take their life as they find it, as they come to examine their own life which albeit may come after they have been harmed very strongly and severely, that we still say that a person should examine himself and determine where he has not had a fair shake and simply recognize that he has a greater need to—now that he can know himself, he has a greater need . . . to control himself and correct things to the best he can. I do not believe in . . . determinism . . . . I don't believe it's too late. I believe a person can do that. It's very hard sometimes but a person can do it. It is a question of making that decision one way or another. But those I take to be mitigators, and I do that.

Having said that, there's already been a discussion about prior criminal history . . . .

I particularly . . . note that the defendant was erroneously released from custody in a Wabash County case . . . two days before this offense. It is so horrible that that happened. It's not an aggravator on him except he got out and within two days committed these offenses. That's his responsibility. He was wrongly released, but once he was released he had a responsibility not to do what he did. And that element is for me a terrible thing.

I have listened carefully to both attorneys. I note the . . . aggravating circumstances that the prosecutor mentioned. This was a young woman who had no sexual experience . . . . It's a horror. And she was at her place of work, her first job she had ever had. It's a place where most people in

8

the public think they can go in and buy some cosmetics or lotions or whatever, a well-known chain drugstore open to all the public with public restrooms.

The facts of the case indicated the defendant true to the name that has just been attached to him in this hearing by this Court . . . [:] a predator . . . . Like any hunter in the jungle, he looked over the scene. He chose the place to lurk. He went there. He hid there. He prepared himself. It's like the carnivores that gather around the watering hole. It's terrible. And that victim who thought she was just going to the restroom getting ready for her afternoon shift never made it. And all of the other details of the effects on the victim that were spelled out by the prosecutor were supported in the evidence in this case and I note them.

And therefore I am entering the following judgment: On the defendant's conviction for Rape, Class A felony, I am sentencing the defendant to fifty years incarceration in the Department of Correction. I further order that this sentence be enhanced by the Habitual Offender enhancement from Count III by an additional thirty years executed.

On Count II, Criminal Deviate Conduct, a Class A felony, I sentence the defendant to fifty years incarceration . . . . This count is to be consecutive to the defendant's [sentence] in Count I. The defendant's total sentence is 130 years.

Sent. Transcript at 39-44.

On appeal, Kemp argues that his sentence is inappropriate in light of his character because he has a low IQ, his family background is "problematic and rife with conflict," and he has "a number of barriers to . . . being able to independently live [sic]."[2] Appellant's Br. at 13-14. The trial court was not persuaded by Kemp's argument, and neither are we.

Kemp's unfortunate background and circumstances do not require a revision to his sentence. His crimes against K.E., as described above, were deplorable. He is an habitual offender. He is a sexual predator. His criminal history is extensive, with prior

---

[2] We note that Kemp does not suggest on appeal that his 130-year sentence is inappropriate in light of the nature of the offenses.

adjudications or convictions including intimidation, theft, felony criminal deviate conduct, and felony residential entry. The instant offenses were committed a mere two days after having been released for a prior offense and while Kemp was on parole. On these facts, we cannot say his aggregate sentence is inappropriate.

## Conclusion

In sum, we affirm Kemp's convictions and sentence.

Affirmed.

ROBB, C.J., and VAIDIK, J., concur.